### ROSS v. UNITED STATES.

Circuit Court of Appeals, Fourth Circuit.
January 14, 1930.

No. 2895.

Waddill, Circuit Judge, dissenting.

558

Howard D. Matthews, of Wheeling, W. Va. (Handlan, Garden & Matthews, J. Bernard Handlan, and G. Alan Garden, all of Wheeling, W. Va., on the brief), for appellant.

Arthur Arnold, U. S. Atty., of Piedmont, W. Va., and Russell L. Furbee, Asst. U. S. Atty., of Fairmont, W. Va.

Before WADDILL, PARKER, and NORTHCOTT, Circuit Judges.

NORTHCOTT, Circuit Judge. This is an appeal from a judgment of the District Court of the United States for the Northern District of West Virginia, sentencing appellant, Frank Ross, to imprisonment for 2 years in the Atlanta penitentiary. The defendant was charged with having, on the 4th day of April, 1929, sold intoxicating liquor in violation of the National Prohibition Act, as amended and supplemented by the Act of March 2, 1929 (chapter 473, §§ 1 and 2, 45 Stat. 1446 [27 USCA §§ 91, 92]) commonly known as the "Jones Act."

The evidence for the government was to the effect that a prohibition agent, accompanied by one McGlone, went to a place at Elm Grove, in the county of Ohio, which was known as the "Viaduct Club"; that, when they reached the entrance of the club, a buzzer rang; that they went up a flight of stairs, and came to a door that had a peephole in it; that, after the defendant took a peep at them, they were admitted into a room where there was a bar or counter and some other furniture; including a pool table; that the door was barred; that in this room the prohibition agent bought and paid the defendant for two drinks of whisky; that there was no one else in the place at the time, and that they were in the place about ten minutes; that 50 cents was paid for the two drinks of whisky; and that the liquor was obtained by the defendant in a little room opening into the club room.

The defendant went on the stand and denied the sale; stated that he had bought the place only on March 26, preceding the event testified to taking charge on April 1; that he had never been engaged in the whisky business and never sold whisky, and purchased the place with the intention of starting a restaurant.

It is contended, first, on behalf of the appellant, that the Act of Congress approved March 2, 1929 (27 USCA §§ 91, 92), commonly known as the "Jones Act," is unconstitutional. This act reads as follows:

"That wherever a penalty or penalties are prescribed in a criminal prosecution by the National Prohibition Act, as amended and supplemented, for the illegal manufacture, sale, transportation, importation, or exportation of intoxicating liquor, as defined by section 1, Title II, of the National Prohibition Act, the penalty imposed for each such offense shall be a fine not to exceed $10,000 or imprisonment not to exceed five years, or both: Provided, That it is the intent of Congress that the court, in imposing sentence hereunder, should discriminate between casual or slight violations and habitual sales of intoxicating liquor, or attempts to commercialize violations of the law.

"Sec. 2. This Act shall not repeal nor eliminate any minimum penalty for the first or any subsequent offense now provided by the said National Prohibition Act."

The contention as to the unconstitutionality of the act is based upon the argument that Congress, in declaring its intention in passing the act that the trial court in imposing sentence thereunder should discriminate between casual or slight violations and habitual sales of intoxicating liquor, or attempts to commercialize violations of the law, thereby delegated to the trial court the power of legislation. We do not think so.

Article 1, section 1, of the Constitution of the United States, provides that:

"All legislative powers herein granted shall be vested in a Congress of the United States, which shall consist of a Senate and House of Representatives."

In Wayman v. Southard, 10 Wheat. 1, 42, 6 L. Ed. 253, Chief Justice Marshall said:

"It will not be contended, that congress can delegate to the courts, or to any other tribunals, powers which are strictly and exclusively legislative. But congress may certainly delegate to others, powers which the legislature may rightfully exercise itself."

In passing the "Jones Act," Congress, in increasing the maximum penalties for offenses already existing under the Volstead Act (27 USCA), merely did what it certainly had a right to do, and in declaring its intention as to the application of the law Congress did not in any way delegate a power exclusively legislative. The admonition or advice of Congress to the trial court merely left the court to decide whether or not the offense of

a defendant came within the intention of Congress in the passage of the act. In every act fixing a minimum and a maximum penalty Congress leaves the trial court to fix the punishment according to the gravity of the offense.

Again it is contended on behalf of the appellant that the circumstances of this particular case did not bring the offense for which the appellant was convicted within the declared intention of Congress in passing the "Jones Act." With this contention we cannot agree.

The circumstances surrounding the sale, as testified to by the government witnesses, and this testimony was evidently believed by the jury, show such a condition as to bring the case clearly within the declared intention of Congress.

Defendant was in charge of, and was operating, a place that was thoroughly equipped for the purpose of selling whisky in violation of the law. A buzzer announced the arrival of any one at the place where the sale was made, a peephole allowed an inspection of any one who might apply for admittance, and this peephole was used by the defendant before the government witnesses were admitted; the room where the sale took place was equipped to be operated as a speak-easy, and the sale was made, as a matter of course, by the defendant, according to the government testimony, to two people, one of whom was a stranger to the defendant; the sale was made over the bar or counter. The defendant admitted that he had paid $1,200 for the place, containing only the bar or counter, some chairs, an ice box, and an old pool table, a price entirely out of proportion to the value of the property. All of these circumstances certainly bring the crime for which the defendant was convicted under the class of "attempts to commercialize violations of the law," and clearly point to "habitual sales."

It is contended on behalf of appellant that the demurrer to the indictment should have been sustained, but upon inspection we are of the opinion that the indictment was amply sufficient.

Other assignments of error, as to bill of particulars, requested by defendant, and as to the admission of certain evidence, are of no merit.

The evidence for the prosecution brings the offense within the declared intent of Congress in the passage of the "Jones Act" (27 USCA §§ 91, 92), and the defendant was sentenced to two years in the Atlanta penitentiary, when under the statute he could have been given five years. We find no error in the record, and the judgment of the court below is accordingly affirmed.

WADDILL, Circuit Judge. I regret not to be able to concur in the disposition of this case by the majority of the court, and will briefly state my reasons for dissenting:

The indictment is against the defendant for violating the National Prohibition Law, and is, in part, as follows:

" * * * That Frank Ross on or about the 4th day of April, 1929, and after the 2nd day of March, 1929, at or near Elm Grove, in the County of Ohio, in the District aforesaid, and within the jurisdiction of this Court, did unlawfully, willfully, knowingly and feloniously sell to Agent P. W. Barr a quantity of intoxicating liquor, the same containing more than one-half of one per cent. of alcohol by volume and being then and there fit for use for beverage purposes a further description of the find and quantity whereof is to the Grand Jurors unknown, contrary to the Act of Congress passed on the 28th day of October, 1919, commonly known as the National Prohibition Act, and subsequent amendments thereto, and against the peace and dignity of the United States of America."

The provision of the National Prohibition Act prescribing punishment for a first offense for the unlawful sale or manufacture of liquor is as follows:

"Any person who manufactures or sells liquor in violation of this chapter shall for a first offense be fined not more than $1,000, or imprisoned not exceeding six months." Title 27, § 46, USCA; 41 Stat. 316.

It would seem clear that the punishment thus prescribed applies to the offense covered by the indictment in this case, which is charged specifically to have been contrary to the act of Congress passed on October 28, 1919, known as the National Prohibition Act, and subsequent amendments thereto, though the indictment, in making the charge of the crime committed on April 4, 1929, does say "and after the 2nd of March, 1929," which would seem to be a matter of surplusage, as it was unnecessary to aver that the 4th of April, 1929, was after the 2d of March, 1929. The government seems to have conducted its case upon the theory that the Act of the 2d of March, 1929, known as the Jones Act, applied to, and should control in, the matter of the punishment to be imposed upon the defendant, since the recital of the 4th of April, 1929, as being after the 2d of March, 1929, could have no other application to the case.

The Jones Act of March 2, 1929 (27 US CA §§ 91, 92), set out in the opinion of the majority of the Court, greatly modifies and changes the punishment for offenses committed under the National Prohibition Act of October 28, 1919. Under the latter act, for a first offense a fine of not more than $1,000, or imprisonment not exceeding 6 months, was imposed (27 USCA § 46), whereas the Jones Act (27 USCA § 91) prescribes that the penalty or penalties for the illegal manufacture, sale, transportation, importation, or exportation of intoxicating liquor, as defined by section 1, title 2, of the National Prohibition Act (27 USCA § 4), shall be a fine not to exceed $10,000 or imprisonment not to exceed 5 years, or both.

The importance of this latter act cannot well be overestimated in its application to offenses involving large and important transactions, in which a maximum penalty of a fine not exceeding $1,000 or 6 months' imprisonment, imposed for a first offense, was wholly inadequate, while ample for the enforcement of the law in petty cases, as evidenced by its successful operation for 10 years. In this case, although under the law prior to the Jones Act only the latter punishment could, as a maximum, have been prescribed, and, under the facts of this case, would have been ample punishment, and, indeed, much more than would ordinarily have been thought of for the single sale of two drinks of liquor, costing 50 cents, still, by inserting into the indictment here the words "after the 2nd of March, 1929," the Jones Act is sought to be applied, and 2 years' imprisonment at hard labor in the United States penitentiary at Atlanta, inflicted upon the defendant for an offense for which not more than 6 months' imprisonment could have been had, and not more than a moderate fine would likely have been imposed, under the act of 1919.

I am not unaware that in the federal courts fixing punishment is ordinarily committed to the trial court. The authorities to that effect are clear, but in a case like the present, where the act under which the prosecution is had is not entirely clear, and in which the punishment has been elevated from confinement in jail to that of confinement in the penitentiary, and the length of such imprisonment has been increased at least to four times what it might have been, as a misdemeanor under the act specifically covering the offense charged in the indictment, and when to that has been added, in plain violation of the law, from my view, "at hard labor" for the full term, as if to further stigmatize and degrade the defendant, this court should, in such circumstances, act only when plainly required to do so, especially when it is remembered that the alleged crime, although charged to have been the sale of a quantity of intoxicating liquor, actually consisted merely of the sale to a public official of two drinks of whisky, costing 25 cents each.

Considering this case, and its proper disposition, as arising under the Jones Act, in the light of the important proviso contained in that act, respecting punishment for offenses thereunder, viz., a fine "not to exceed $10,-000 or imprisonment not to exceed five years, or both," as follows: "Provided, That it is the intent of Congress that the court, in imposing sentence hereunder, should discriminate between casual or slight violations and habitual sales of intoxicating liquor, or attempts to commercialize violations of the law," there can be no doubt that the judgment of the lower court should be reversed, and the sentence imposed set aside. The proviso is a most important one, forming a part of the act itself, and giving life, effect, and meaning to the purpose and intent of the legislative mind respecting the change of punishment for offenses under the law. The Jones Act (27 USCA §§ 91, 92) was primarily intended to reach and prevent violations of the law conducted on a large scale, not mere petty offenses such as this case confessedly involves —a sale of two drinks of liquor costing 50 cents. Congress well recognized that the country and courts had been surfeited with that class of offenders, and it was to prevent the multiplication of those and at the same time bring to justice the large offenders that the Jones Act was passed. Had it been suggested to Congress that, for the sale by a first offender of two drinks of whisky at one time, an humble, ignorant human being would be sentenced to 2 years' imprisonment in a federal penitentiary at hard labor, it would be safe to say that the proposed act would have been quickly abandoned.

The spirit and meaning of the Jones Act are almost as plain as if written in express terms therein that under it proper discrimination should be made between important and petty violators of the law, and, indeed, the proviso is in itself a timely and valuable one, not a mere hint, but practically the advice to the courts, in imposing sentence thereunder, as to what the judgment and intent of Congress were in the premises. If this is not the correct interpretation to be given to the proviso, may it not be reasonably asked what its purpose was, as the act, independent of the proviso, was clear, and not to give heed to the proviso would be to ignore it entirely,

and thus fail to take into account the most important and essential part of the enactment? Giving the greatest possible latitude to the constitutional provisions respecting the authority of the courts in imposing sentences in criminal cases, it will hardly be contended that Congress should be denied the legislative right to say and prescribe what should be done in respect to the punishment in a particular class of cases. The proviso in question simply conveys what is the legislative intent in respect to the punishment of offenses under the Jones Act, and the same is nothing more than would have been inferred from the passage of the act, as it is the legislative intent, after all, that is to be given effect to in ascertaining the meaning of the act.

Two specific directions are in effect made to the courts in imposing sentences: (a) That they should "discriminate between casual or slight violations and habitual sales of intoxicating liquor," and (b) "Or attempts to commercialize violations of the law." Surely the sale of two drinks of whisky by a first offender could not be construed into the habitual sale of intoxicating liquor, and the same would fall strictly within the terms of a casual or slight violation of the law. It could not be deemed habitual, and a sale of two drinks only would be but a casual or slight violation, if such at all. Apparently the view of the majority of the court in this case is that the sale of two drinks of whisky, under the circumstances, constituted an attempt to commercialize violations of the law. I am utterly unable to concur in this, and can but believe that a careful review of the testimony will conclusively demonstrate that such is not the correct view to be taken of what occurred. The testimony is very short, four witnesses being examined, and only three of them claimed to have any knowledge of the transaction.

An inspector, Barr, testified for the government to the effect that about 9:30 o'clock on the night of April 3, 1929, in company with a man whom he casually joined on the street, who was at the time drinking and largely under the influence of liquor, he went to the place of business of the defendant, taking with him the stranger; that the officer bought for himself and his companion a drink each, paying therefor 50 cents; that they remained in the place for about ten minutes. The officer described their entrance to the place, in which a buzzer rang as they approached the door, the opening of the door, and the purchase of the drinks, which it seems were brought in from another room, taken from a bottle, and served to the two of them. The government's contention, in effect, was that this place, equipped and maintained by the defendant, was fixed up to facilitate him in illegally vending spirituous liquors, and constituted an attempt to commercialize violations of the law.

The defendant's testimony was largely uncontradicted, especially as it related to his life's conduct, and as to his connection with the place where he did business and at which it is claimed the whisky was purchased. He denied specifically the sale of the liquor to the government witnesses on the evening in question, and that he ever saw the government agent, Barr, though he said he had, on the night before, seen the man accompanying the government agent. The defendant was a foreigner, having resided in this country some 23 years, and was densely ignorant. He testified, and his evidence is, in effect, undisputed, that during the 23 years of his life in this country he had spent most of the time in Wheeling, W. Va., and in the vicinity, though for brief periods thereof he had lived in Pittsburg, and in New York; that he had worked in mills in and around Wheeling, and much of the time had been engaged in working in and keeping restaurants, which had been his life work, largely, he having owned quite a number of restaurants during that period; that on March 26, 1929, finding work scarce, he concluded to open a restaurant, and that he had had brought to his attention the Viaduct Club, which was then being conducted by a man named Fred Cross, as a suitable location for his restaurant, and that, upon agreeing upon terms of purchase, namely, that he was to pay $1,200 for the stand, including a billiard table, an ice box, a cash register, and other paraphernalia and supplies incident to the business, he had consummated the purchase and took charge of the place on the 1st of April, 1929, and was proceeding to fit up, with a view of opening, his restaurant at the time of the occurrence in question, and the alleged purchase of the two drinks of whisky; that he had never kept a speak-easy, or sold any liquor, or been connected with the sale of liquor, nor had he any idea of doing so in this place; that the buzzer and peephole referred to in the testimony were connected with the place he had bought, which he saw for the first time at the time he signed the contract; that he had no idea of using either the buzzer or the peephole in the conduct of his business of running a restaurant; and that they would have been wholly useless and in the way in so doing.

562

In my view, the decision of the District Court is plainly wrong, and ought to be reversed.