In the Matter of the Petition for Naturalization of Brenda Barbara
**WEITZMAN.**
Petition No. 24598.

United States District Court
D. Minnesota,
Fourth Division.

May 23, 1968.

Thomas C. Kayser, St. Paul, Minn., for petitioner.

Maurice Sher, Gen. Atty., Immigration and Naturalization Service, St. Paul, Minn., for the U. S. Immigration Service.

## MEMORANDUM AND ORDER

DEVITT, Chief Judge.

The issue in this contested petition for naturalization is as to the eligibility for United States citizenship of the 25-year-old female applicant in view of her stated refusal to take that part of the oath of citizenship requiring her to bear arms or perform noncombatant service in the armed forces.

The Petitioner is a native of South Africa. She is married to a United States citizen and is the mother of two minor children. The family has resided in Minneapolis, Minnesota since October, 1964. The applicant concededly qualifies for United States citizenship in all respects except that she refuses to take that part of the oath of allegiance requiring the bearing of arms or the performance of noncombatant service in the armed forces of the United States. Following a preliminary examination pursuant to 8 U.S.C. § 1446(b), held on March 3 and 11, 1967, the examiner found that the Petitioner's unwillingness to take that part of the oath requiring the bearing of arms was based on a personal moral code rather than on religious training and belief as defined in 8 U.S.C. § 1448(a) and recommends here that the petition be denied. Section 1448(a) is set out in the footnote below.[1]

It will be noted that Sec. 1448(a) exempts an applicant for naturalization from obligating himself to perform the military service set out in Clauses (5)(A) and (5)(B) when the petitioner's opposition to "any type of service in the Armed Forces" is fostered by "religious training and belief." "Religious training and belief" is defined as "an individual's belief in a relation to a Supreme Being involving duties superior to those arising from any human relation, but does not include essentially political, sociological, or philosophical views, or a merely personal moral code."

It should be noted that this exemptive language is phrased identically to

[1]. "(a) A person who has petitioned for naturalization shall, in order to be and before being admitted to citizenship, take in open court an oath (1) to support the Constitution of the United States; (2) to renounce and abjure absolutely and entirely all allegiance and fidelity to any foreign prince, potentate, state, or sovereignty of whom or which the petitioner was before a subject or citizen; (3) to support and defend the Constitution and the laws of the United States against all enemies, foreign and domestic; (4) to bear true faith and allegiance to the same; and (5) (A) to bear arms on behalf of the United States when required by the law, or (B) to perform noncombatant service in the Armed Forces of the United States when required by the law, or (C) to perform work of national importance under civilian direction when required by the law. Any such person shall be required to take an oath containing the substance of clauses (1)–(5) of the preceding sentence, except that a person who shows by clear and convincing evidence to the satisfaction of the naturalization court that he is opposed to the bearing of arms in the Armed Forces of the United States by reason of religious training and belief shall be required to take an oath containing the substance of clauses (1)–(4) and clauses (5) (B) and (5) (C) of this subsection, and a person who shows by clear and convincing evidence to the satisfaction of the naturalization court that he is opposed to any type of service in the Armed Forces of the United States by reason of religious training and belief shall be required to take an oath containing the substance of clauses (1)–(4) and clause (5) (C). The term 'religious training and belief' as used in this section shall mean an individual's belief in a relation to a Supreme Being involving duties superior to those arising from any human relation, but does not include essentially political, sociological, or philosophical views or a merely personal moral code."

that formerly contained in Section 6(j) of the Universal Military Training and Service Act, 50 U.S.C. App. § 456(j) (1958 ed.) which exempted certain conscientious objectors from combatant training and service in the armed forces. Thus in determining whether the petitioner is entitled to religious conscientious-objector status here, the Court may well be attentive to a recent interpretation of the analogous section in the Military Training and Service Act in the case of United States v. Seeger, 380 U.S. 163, 85 S.Ct. 850, 13 L.Ed.2d 733.

In *Seeger* the Court was confronted with the question of interpreting the "Supreme Being" language of Sec. 6(j). The precise issue was phrased in this fashion: "Does the term 'Supreme Being' as used in § 6(j) mean the orthodox God or the broader concept of a power or being, or a faith, to which all else is subordinate or upon which all else is ultimately dependent'?"

The Supreme Court's resolution of the question was stated as follows:

"Under the 1940 Act it was necessary only to have a conviction based upon religious training and belief; we believe that is all that is required here. Within that phrase would come all sincere religious beliefs which are based upon a power or being, or upon a faith, to which all else is subordinate or upon which all else is ultimately dependent. The test might be stated in these words: A sincere and meaningful belief which occupies in the life of its possessor a place parallel to that filled by the God of those admittedly qualifying for the exemption comes within the statutory definition." 380 U.S. at 176, 85 S.Ct. at 859.

Additionally, of course, the opposition to service in the military must be sincere and "by reason" of such beliefs. It is therefore necessary to analyze the Petitioner's beliefs as reflected by the evidence in the light of the *Seeger* decision.

■ At the outset it should be noted that the Petitioner's sincerity is unquestioned. The government does not contest

that she is sincere in her beliefs, and, indeed, as a 25-year-old mother of two children and with the corresponding improbability of being required to bear arms or otherwise serve in the military service, her credibility is almost beyond doubt. In addition, her straightforward demeanor when on the witness stand strengthens this view.

The Petitioner, of Jewish parentage, was born and raised in South Africa. As an adolescent she became a Baptist. Thereafter, still unsatisfied by formal religion she disassociated from it and has not returned. She does maintain a relatively knowledgeable understanding of traditionally religious principles and beliefs.

It appears from her testimony that her objection to warfare and the bearing of arms is total. She is repulsed by no particular war, but by all killing. If it were eventually necessary for all citizens to bear arms to defend the United States, the Petitioner states she would not so be able to participate because of her pacifistic nature and beliefs. Quoted below are some excerpts from the Record reflective in detail of the Petitioner's beliefs:

"My pacifism is not based on any religious or cosmological beliefs. I am a pacifist because of a biological push, not a theological pull * * *" Record, p. 25, f. 1, et seq.

"To say that order is rational is to assume a thinking mind controlling the Universe. This is what men believed in the Eighteenth Century. I find it impossible to believe." Record, p. 28, f. 23, et seq.

"My objection to bearing arms has no relationship whatsoever to any Supreme Being or superior relationship." Record, p. 38, f. 13, et seq.

"Q Is your objection to the bearing of arms based on a belief and a power or being or faith to which all else is subordinate or upon which all else is ultimately dependent?

"A My answer is no." Record, p. 39, f. 1, et seq.

By the Court:

'Q  What I am trying to find out is if your beliefs are in some way analogous to the beliefs in a Supreme Being which conventional religionists hold?

"A  I don't think so.  Not unless biology can be considered a religion." Record, p. 48, f. 11, et seq.

"Q  You do not contend that your disinclination to bear arms is based on a belief in the Supreme Being or anything analogous to it?

"A  That is correct."  Record, p. 51, f. 4, et seq.

From the whole record, and particularly from the excerpts quoted above, it appears quite clear to the Court that the Petitioner's objection to rendering military service is based on a personal moral code and not on religious training and belief.  In *Seeger* each of the defendants recognized some external force greater than man's relationship to man which occupied a position in his life tantamount to a God or a Supreme Being.  Such is not true of Petitioner's beliefs.  They are clearly personal beliefs.

Petitioner has not shown by the "clear and convincing evidence" required by the statute that she is opposed to military service by reason of "religious training and belief."

The Petitioner also urges that if she be not exempt from taking the oath to perform military service because of her beliefs, then that part of the statute, 8 U.S.C. § 1448(a) which requires belief in a Supreme Being as a condition of exemption, is unconstitutional under the "establishment" and "free exercise" clauses of the First Amendment, and the due process clause of the Fifth Amendment.

Petitioner relies principally on Everson v. Board of Education, 330 U.S. 1, 67 S.Ct. 504, 91 L.Ed. 711 (1947); Torcaso v. Watkins, 367 U.S. 488, 81 S.Ct. 1680, 6 L.Ed.2d 982 (1961), and Abington Township School District v. Schempp, 374 U.S. 203, 83 S.Ct. 1560, 10 L.Ed.2d

844 (1963) in support of her argument that the statute violates the Constitution because, in essence, it forces her to profess a belief in a Supreme Being, sanctions a religion based on a Supreme Being, and unfairly discriminates against her because she is a non-believer.

■  In connection with these urgings of unconstitutionality of the statute, it must be remembered that naturalization is clearly a privilege to be given, qualified, or withheld, as the Congress of the United States shall determine. United States Constitution, Article I, Section 8.  United States v. Macintosh, 283 U.S. 605, 615, 51 S.Ct. 570, 572, 75 L.Ed. 1302 (1931).

The United States Supreme Court in passing on the World War I Draft Law summarily dismissed as "unsound" the contention then made, as made here, that the exemption provision of that law pertaining to clergymen and conscientious objectors violated the First Amendment "establishment" and "free exercise" clauses.  Arver v. United States, 245 U.S. 366, 38 S.Ct. 159, 165, 62 L.Ed. 349 (1918).

The Ninth Circuit faced the issue squarely in Clark v. United States, 236 F.2d 13.  A conscientious objector contended that the Supreme-Being clause offended the First Amendment.  The Court rejected the argument and said at p. 24:

"This court has previously decided this point adversely to appellant in George v. United States, 9 Cir. 1952, 196 F.2d 445, at page 450, certiorari denied 344 U.S. 843, 73 S.Ct. 58, 97 L.Ed. 656, where it was said:

" 'In sum, as the exemption from participation in war on the ground of religious training and belief can be granted or withheld by the Congress, the Congress is free to determine the persons to whom it will grant it, and may deny it to persons whose opinions the Congress does not class as "religious" in the ordinary acceptance of the word.  So *assuming that the definition of "religious training and*

*belief" in Section 456(j) is restrictive, such restriction is within the constitutional power of Congress.'"* [Emphasis supplied]

The United States Supreme Court was afforded the opportunity to pass upon the issue determined by the Ninth Circuit in the *George* and *Clark* cases, but refused to grant certiorari in each instance, 344 U.S. 843, 73 S.Ct. 58, 97 L. Ed. 656; 352 U.S. 882, 77 S.Ct. 101, 1 L.Ed.2d 80.

It might be noted in passing that the United States Supreme Court was also given the opportunity to change its position on the issue when raised in the *Seeger* case. Peter Seeger, one of the parties, contended that the exemption provision based on "religious training and belief" violated the establishment clause of the First Amendment. But the Court declined to do so.

Probably the most pertinent observations of the Supreme Court on this subject came in the case of United States v. Macintosh, 283 U.S. 605, 51 S.Ct. 570, 75 L.Ed. 1302 (1931), where the Court pointed out that it is within the province of the Congress to grant or withhold exemptions to military service under such terms as it has a mind to do. At pages 623 and 624 of 283 U.S. 605, at page 575 of 51 S.Ct. 570, the Court said:

> "The conscientious objector is relieved from the obligation to bear arms in obedience to no constitutional provision, express or implied; but because, and only because, it has accorded with the policy of Congress thus to relieve him. The alien, when he becomes a naturalized citizen, acquires, with one exception, every right possessed under the Constitution by those citizens who are native-born (Luria v. United States, 231 U.S. 9, 22, 34 S.Ct. 10, 58 L.Ed. 101); but he acquires no more. The privilege of the native-born conscientious objector to avoid bearing arms comes, not from the Constitution, but from the acts of Congress. That body may grant or withhold the exemption as in its wisdom it sees fit; and, if it be withheld, the native-born conscientious objector cannot successfully assert the privilege."

Counsel, at oral argument, engaged in a colloquy as to whether or not the principles of the *Macintosh* case were overruled by Girouard v. United States, 326 U.S. 61, 66 S.Ct. 826, 90 L.Ed. 1084.

It appears quite clear to me that the principles of the *Macintosh* case were not overruled by *Girouard*, but only the statutory construction of the oath as it then existed.

The Supreme Court viewed both the *Girouard* and *Macintosh* cases as passing only on the issues of statutory construction and in Girouard said: "The Schwimmer [United States v. Schwimmer, 279 U.S. 644, 49 S.Ct. 448, 73 L.Ed. 889], *Macintosh* and *Bland* [United States v. Bland, 283 U.S. 636, 51 S.Ct. 569, 75 L.Ed. 1319] cases involved, as does the present one, a question of statutory construction." p. 827 of 66 S.Ct.

■■ In response to the claimed constitutional infirmity of the statute, it appears that the Supreme Court, and many inferior Federal Courts, have many times recognized the breadth of the specifically delegated constitutional authority of the Congress to legislate in the field of immigration and naturalization. Although the Supreme Court has been afforded the opportunity on several occasions to declare the religious-exemption provisions of the naturalization and military service laws to be unconstitutional, it has declined to do so. It may well be, and this only by way of speculation, that the Supreme Court is of the view that its broadened interpretation of the Supreme-Being clause in *Seeger* satisfies the constitutional infirmity claimed against it in recent years. But, be that as it may, it is my view that 8 U.S.C.A. § 1448(a) is constitutional.

In view of the Petitioner's absence of a showing by clear and convincing evidence that she satisfies the statutory requirements for naturalization, the petition is

Denied.