## GURERA v. UNITED STATES.
### No. 8774.

Circuit Court of Appeals, Eighth Circuit.
April 16, 1930.

John T. Mathis and C. S. Walden, both of Kansas City, Mo., for appellant.

William L. Vandeventer, U. S. Atty., of Kansas City, Mo., and Claude E. Curtis, Asst. U. S. Atty., of Jefferson City, Mo.

Before STONE and VAN VALKEN-BURGH, Circuit Judges, and DAVIS, District Judge.

STONE, Circuit Judge.

Appellant, and one Reed were indicted under two counts, one of which charged the transportation of one-half gallon of whisky, the other the possession of nine and one-half gallons of whisky. Reed pleaded guilty, and appellant was found not guilty under the possession count, but guilty upon the transportation count. He was sentenced to two years' imprisonment in the penitentiary. From that judgment he brings this appeal, and four claimed errors are presented here.

I. The first matter presented is the overruling on a demurrer to the transportation count of the indictment. The argument in support of this contention is that the indictment is vague and indefinite, in that it "does not describe the place from, nor the place to which, the transportation was had, nor whether it was by truck, wagon, automobile or otherwise." The charging portion of the first count of the indictment is as follows:

"That on the 2nd day of May, 1929, in alley in rear of 1131 East Missouri Ave., Kansas City, Jackson County, Missouri, in the Western Division of the Western District of Missouri, one Carl Gurera, and one Elmer C. Reed, whose name other than as herein set forth is to the grand jury unknown, then and there being, did then and there unlawfully, wilfully, knowingly and feloniously, and in violation of the National Prohibition Act, transport a certain quantity of intoxicating liquor, intended and fit for beverage purposes, to-wit: One-half gallon of whisky containing more than one-half of one per cent. of alcohol by volume; contrary to the form of the statute in such case made and provided and against the peace and dignity of the United States of America."

The indictment identified the day and place and persons and liquor covered by the transportation. It made no difference where the transportation originated or where it was intended to end. The essential fact was that the described liquor was in course of transportation at that time and place. Allegations of the above character are amply sufficient. Also it was not an essential averment to describe the vehicle in which or the method of transportation. If such information were necessary to enable appellant to prepare his defense, he could have requested a bill of particulars in that regard, and, upon proper showing, the trial court would undoubtedly have accorded him such. The evidence in this case is crystal clear that the attacks made upon the indictment were as to matters in nowise necessary to the preparation of this defense, as there was no dispute that the two men accused were arrested at the time and place while in an automobile in which was the half gallon of whisky.

■ II. The second contention is that the evidence was not sufficient to justify submission to the jury. The undisputed facts showed that appellant was the owner of and driving the car. Accompanied by Reed, he had driven up an alley in the early evening after dark, and had parked his car between two garages near the alley. The car remained there only a short time. While there, the liquor was put into the car, the lights of the car turned on, and the car started to back out toward the alley. At this time two prohibition agents made the arrest and found the two men seated together with the whisky, in a half-gallon jug in a paper sack, on the floor between Reed's feet. Appellant's story was that Reed had come by his house, and, after a short conversation, had asked appellant to drive him to his home; that Reed had asked him to go by this place on the way, and he had done so; that he had no connection with the liquor, and did not know what it was. Under the undisputed evidence, the only question of fact for the jury to determine was whether appellant had knowledge of what was in the package. It is taxing credulity to believe that a man would drive up an alley at night, park his car within a few feet of a garage from which the liquor was taken, have that liquor brought out and placed on the floor of the car by him, and not know, to a moral certainty, that it was liquor of some kind. The law does not permit a man to hold his hands over his eyes and then escape the results of not seeing what is before him and what he must know is there. There are various ways of knowing things, and it is idle to say that this appellant, under the undisputed facts here, did not know that he was transporting liquor of some character.

■ III. The third contention is akin to the one just discussed. It has to do with the refusal of the court to instruct the jury that, if they should believe that the facts were as consistent with innocence as with guilt, then it would be their duty to acquit. There are cases where such form of instruction is proper, but those are cases where the essential facts are proven only by circumstantial evidence, and where such evidence, taken to be true, is as consistent with innocence as with guilt. That is not the situation here. The evidence here shows that, if the jury should believe the facts as detailed by the government, in fact, it may be said if they believe those facts which are undisputed, then there would be no room for more than one construction thereof because they are not consistent with innocence.

■ IV. It is contended that the imposition of a two-year sentence for this offense is in violation of the Act of March 2, 1929 (45 Stat. 1446 [27 USCA §§ 91, 92]), commonly known as the Jones Act, or, at least, is an abuse of the discretion imposed in the court by said act. This contention is based upon the proviso of that act, which is:

"Provided, that it is the intent of Congress that the court, in imposing sentence hereunder, should discriminate between casual or slight violations and habitual sales of intoxicating liquor, or attempts to commercialize violations of law."

It is a matter of common knowledge that this act was the result of a situation which had arisen in connection with the enforcement of the prohibition laws. Experience had demonstrated that there were violations of various kinds and degrees. These violations extended from the making of a quart of wine by a housewife for private household or medicinal purposes, with no thought or intention of violating the law, up to the organized business of manufacturing, transporting, and selling illicit liquor upon a large scale by desperate criminals who defiantly flouted the law. Between these extremes was every possible gradation. The penalties under the Volstead Act were amply severe to deal with the less serious violations, but were no deterrent to the more serious and dangerous class. Congress was faced with the necessity of meeting this situation. Instead of attempting the unprofitable, if not impossible, task of laying down legislative gradations with penalties for each, Congress wisely thought it best to raise the maximum penalty sufficiently high to take care of the serious violations and, at the same time, to express its intent or caution as to how such penalties should be applied by the courts. As said by the Fourth Circuit (Ross v. United States [C. C. A.] 37 F.(2d) 557, 558), the proviso was an "admonition or advice of Congress to the trial court." Also it is possible that Congress was not unmindful that there existed considerable diversity in sentences for relatively the same degree of violation, and that one element in such difference was the views of the particular judge as to the desirability of the prohibition law or as to the best method to enforce it. But, whatever may have been the motivating idea in the proviso, it is clear that it does not amount to a legislative requirement by which sentences imposed under the law can be adjudged excessive and thus controlled by appellate courts. If there is one rule in the federal criminal practice which is firmly

established, it is that the appellate court has no control over a sentence which is within the limits allowed by a statute. If Congress had intended to change that rule in regard to violations of the liquor laws, we would have expected a very clear and definite expression of that intent and a workable expression of the rules which should guide the trial courts in assessing punishments and the appellate courts in reviewing such assessments. The proviso furnishes neither. The wording of the act is very unusual and enlightening. Ordinarily, Congress manifests its intent by declaring a rule of conduct which courts have no choice in enforcing. This is a legislative command. The language here is not of that character nor meaning. Here the maximum and minimum penalties are fixed—so far there is command —and then there is the caution or guide to the courts in applying that command. As a matter of power, the discretion of the trial court in assessing sentences under the liquor laws is as broad now as it was before the enactment of this statute. The real and practical effect of the proviso is that it shows the purpose of Congress in raising the penalties. That purpose, honest, conscientious trial judges will recognize and respect and endeavor to make effective.

A related matter is stated but scarcely argued by counsel. The entire statement is as follows:

· "If that part of the Act of March 2, 1929, which provides that the court should discriminate between slight and casual violations, and habitual sales, or attempts to commercialize violations of the law, can be construed as authorizing the trial court to base the penalty imposed upon matters, or transactions or attempts not charged in the indictment, or proven in evidence, the act is violation of the right of trial by jury accorded the defendant under Section 2 of Article III of the Constitution of the United States.

."The consideration of such evidence, not in the presence or hearing of the jury, and without opportunity to the defendant to meet such additional charges, or a jury to pass upon the same deprives the defendant of the right of trial by jury."

Counsel do not point out, and we have been unable to find anywhere in the record, to what they are referring when they speak of matters not charged in the indictment or proven in the evidence or evidence not in the presence and hearing of the jury. There is no showing anywhere in the record of anything which did not take place in the full hearing of the jury. Lest the language just used be hereafter construed to mean that, if such showing appeared in the record, there would be merit in this contention, we make clear that such is not our view. After a verdict of guilty, it is usual for the court to inquire of the prisoner whether he has anything to say before he is sentenced. This is usually after the jury has been discharged from the case. The purpose is to inform the court in assessing the punishment. At such times it is usual for both the prisoner and the prosecuting counsel to give the court such information as they may think useful to the court. This is entirely proper and of long usage. Such information need not be submitted to the jury, made part of the record, nor be taken as sworn testimony.

The judgment should be, and is, affirmed.