**UNITED STATES of America,**
**Plaintiff,**

v.

**John Philip CROCKER, Defendant.**
**No. 3–69–Crim–87.**

United States District Court,
D. Minnesota,
Third Division.
Feb. 11, 1970.

Robert G. Renner, U. S. Atty., and Thorwald H. Anderson, Asst. U. S. Atty., Minneapolis, Minn., for plaintiff.

Kenneth E. Tilsen, St. Paul, Minn., for defendant.

## MEMORANDUM AND ORDER

DEVITT, Chief Judge.

In this jury-waived criminal case charging the defendant with violation of the Selective Service Law, the issue as framed by the indictment and a not-guilty plea is whether the defendant's refusal to register for the draft for reasons of conscience is protected by the First Amendment.

The defendant, a 19-year-old birthright Quaker, and an Associate Member of the Society of Friends, is charged with knowingly refusing to present himself and submit to registration as was required of him when he became liable for training and service under the Military Selective Service Act of 1967. 50 App.U.S.C. § 453. The evidence shows that defendant informed his local board by letter [1] that although he had reached

---

1. The letter, dated November 11, 1968, reads as follows:

"Local Board No. 126,
Washington County
National Guard Armory,
Stillwater, Minn.

"Gentlemen: I am writing to inform you of my non-registration. I feel the draft, or any system involving involuntary (sic) servitude, is morally and politically wrong. Our government is theoretically an institution for the people, and when it becomes an end in itself, demanding that people sacrifice a part of their lives, or life itself, to perpetuate that institution, it no longer exists for the people. Indeed, the government exists in spite of the people.

"I further believe that human life, be it Vietnamese, Chinese, African, or American, is of inestimable worth. Any system that exists, at its best, for the purpose of controlling the lives of these people, and at its worst, killing these people, is necessarily evil.

"Having been brought up in a Quaker home, I believe it would have been relativ-

ly (sic) easy for me to have obtained a C. O. status. I could also have a 2–S deferment as I am now a student at the University of Minnesota. But I believe it is wrong for me to carry a Draft card and say I am deferred from killing when someone who isn't quite intelligent enough, wealthy enough, or interested enough -o go to school and get a student deferment, or someone else who believes as I do against killing, but isn't a member of a recognized peace church and so can't get an I–O, is inducted into the army and forced to kill and maybe die.

"But more importantly, these deferments aren't built into the system out of humanitarian reasons. After the Selective Service System gives out its 2–S, 2–A, 3–A, etc. deferments, it appears that there is a manpower shortage for the armed forces. This mythical shortage is used by the system to justify its existance. (sic) Having an apparent reason for existing it then uses these deferments to entice or intimidate young men into areas of 'national interest' as defined by

the age of 18 he could not and would not register for the draft, and thereby submit to the authority sought to be exercised by the draft board. His reasons for such decision are based upon his religious beliefs which, he says, require that he act solely according to the dictates of his own conscience. Since he is conscientiously opposed to war, registration with the Selective Service Board would be inconsistent with this position and, he urges, would delegate to the Selective Service authorities the making of judgments in matters of conscience which he feels he is morally bound to determine for himself.

There is no dispute as to the facts. The government has proved its case as set out in the indictment. But defendant asserts that his actions, based as they are upon religious beliefs, are protected by the First Amendment guarantee that: .

"Congress shall make no law * * * prohibiting the free exercise [of religion]." U.S.Const. Amend. I.

Defendant argues that the cases of Sherbert v. Verner, 374 U.S. 398, 83 S.Ct. 1790, 10 L.Ed.2d 965 (1963) and In re Jenison, 267 Minn. 136, 125 N.W.2d 588, 2 A.L.R.3d 1389 (1963) support his position.

Defendant's counsel has submitted a scholarly brief on the historical basis of the First Amendment from which he urges the conclusion that it was the intention of the framers of that Amendment that persons such as Quakers were intended to be protected from any type of infringement upon their religious freedom, and that the requirement of registration under the Selective Service System is such an infringement.

Considerable testimony was received relating to the beliefs and practices of the members of the Society of Friends. Dr. Mulford Q. Sibley, University of Minnesota Professor of Political Science, and author and lecturer on Quaker history and beliefs, testified to numerous examples of Quakers following their consciences rather than submitting to the dictates of others in society. Ronald Mattson, Ministering Secretary for the Minneapolis Religious Society of Friends, provided us with excerpts from significant writings and petitions of Quakers throughout history reflecting belief in the supremacy of one's conscience. John Martinson, Director of the Friends Service Committee in Minnesota, attested to the sincerity and depth of the defendant's belief based on his experiences counselling more than 1,200 prospective draftees. The defendant's father, also a member of the Society of Friends and a conscientious objector in World War II, told of defendant's religious education and confirmed the sincerity of his son's religious thinking. One of the defendant's brothers, George William Crocker, also a member of the Society of Friends, is a conscientious objector, but he refused to apply for exemption by filling out a conscientious objector form. He was classified I-A. When he refused induction he was convicted. He claimed the Military Selective Service Act of 1967 was unconstitutional. His conviction was recently affirmed. United States v. Crocker, January 8, 1970, 420 F.2d 307 (8th Cir. 1970).

The defendant took the stand and confirmed that he had refused to register for the draft and restated his position of conscience as set out in the letter he wrote to the draft board.

The Supreme Court has on several occasions passed on the basic principle here involved. United States v. MacIntosh, 283 U.S. 605, 51 S.Ct. 570, 75 L. Ed. 1302 (1931), Selective Draft Law Cases, 245 U.S. 366, 38 S.Ct. 159, 62 L. Ed. 349 (1918), and Jacobson v. Massachusetts, 197 U.S. 11, 25 S.Ct. 358, 49 L.Ed. 643 (1905). In his brief defendant's counsel expresses the view that the

General Hershey. This is the process described by the system as 'Channeling.'

"The sole purpose of the I–O status is to siphon off any dissent, and keep things going as smoothly as possible. I cannot and will not cooperate with such a system.

"Yours in Peace,

"/s/ John Crocker"

*MacIntosh* case has been overruled. In my view it has not been. The principles of the *MacIntosh* case are still the law, although Girouard v. United States, 328 U.S. 61, 66 S.Ct. 826, 90 L.Ed. 1084 (1946), did overrule the statutory construction of the oath set out in *MacIntosh*. See In re Weitzman, D.C., 284 F.Supp. 514, 516 (1968).[2]

These cases establish the principle that the privilege of conscientious objectors not to bear arms comes not from the Constitution but from the statutes enacted by the Congress: that the power of Congress to conduct war is a constitutional power and includes the power to compel the armed service of any citizen in the land without regard to his objections or his views in respect to the justice or morality of a particular war or a war in general.

From these cases it appears clear that a conscientious objector, absent a statutory exemption, may be compelled to serve in the armed services of the country, and that such does not contravene his First Amendment rights. Surely, then, the requirement that a citizen register under the Selective Service System cannot be a violation of the First Amendment.

The decisions reached in the two cases cited by the defendant are not controlling here, although the principles are pertinent. In Sherbert v. Verner, *supra,* a Seventh Day Adventist was disqualified from receiving unemployment benefits because he refused jobs which required Saturday work, and in *Jenison,* a petit juror refused to perform jury service on religious grounds. In these two cases the individual concerned was forced to choose between following his religious principles or abandoning them in order to avoid jail in *Jenison,* or loss of employment benefits in *Sherbert.* But those cases dealt with a situation totally unlike that here. Certainly the waging of war and the necessary authority to recruit manpower for it is a

compelling national interest properly within the government's constitutional power to exercise. Action in accordance with religious beliefs is not totally free from governmental regulation so long as the conduct to be regulated relates to public safety, peace, or order. Sherbert v. Verner, *supra.* See also O'Brien v. United States, 391 U.S. 367, 88 S.Ct. 1673, 20 L.Ed.2d 672 (1968).

It may be assumed that the defendant is a conscientious objector. As such, he can comply with both the law and his conscience by registering and applying for conscientious objector status. The probability is great, in view of the evidence here, that the Board would grant such status. It is difficult to see, as defendant urges, how the mere act of registration and applying for conscientious objector status imposes any burden on the free exercise of religion. Moreover, how are the administrators of the Selective Service System to determine the presence and sincerity of an individual's belief unless the appropriate registration and application procedures for determining such are followed? If defendant's view were accepted, a person's mere assertion of conscientious objection would foreclose any inquiry into it; and those who became subject to registration could avoid the law by merely asserting conscientious objection without being required to make a showing of it.

I can find no case which supports religious conviction as a defense to the crime of failure to register.

There are many cases to the contrary, i. e. United States v. Kime, 188 F.2d 677 (7th Cir.1951); Michener v. United States, 184 F.2d 712 (10th Cir.1950); Richter v. United States, 181 F.2d 591 (9th Cir.1950). A very recent case is United States v. Toussie, 410 F.2d 1156 (2nd Cir.1969). See also our own recent Eighth Circuit case, United States v. Pence, 410 F.2d 557, 563 (8th Cir.1969).

The Court finds that the United States has proved beyond a reasonable

2. The *Weitzman* case is on appeal. Decision on it by the Eighth Circuit Court of

Appeals may be pertinent to issues raised here.

doubt every essential element of the crime charged in the indictment and finds the defendant guilty of the crime as charged.

The foregoing expression is intended to comply with Rule 23 of the Federal Rules of Criminal Procedure.

The Probation Officer is directed to prepare a presentence investigation report.