UNITED STATES of America,
Plaintiff-Appellee,

v.

Johnny CHARLES, Defendant-Appellant.

No. 71-2061.

United States Court of Appeals,
Sixth Circuit.

May 26, 1972.

Robert Allen Sedler, Lexington, Ky., for appellant.

Eldon L. Webb, Asst. U. S. Atty. (Eugene E. Siler, Jr., U. S. Atty., Eastern District of Kentucky, on the brief), for appellee.

Before WEICK, EDWARDS and CELEBREZZE, Circuit Judges.

PER CURIAM.

Appellant was convicted of refusing to report for induction into the Armed Forces in violation of 50 App. U.S.C. § 462(a). The District Court imposed the maximum sentence permissible under § 462—five years. Appellant contends that his induction order was invalid and that his conviction must therefore be reversed. He also contends that the District Court abused its discretion in imposing the five year prison sentence.

We deal first with the asserted invalidity of Appellant's induction order.

On October 21, 1970, Appellant was issued an order requiring him to report for induction into the Armed Services. A few days later Appellant telephoned his local Selective Service Board and informed its executive secretary that he intended to seek conscientious objector status. Although the Board accorded him a hearing on his claim it held itself powerless to reopen Appellant's classification. Appellant reported to the induction center, but refused to take the symbolic step forward required of inductees.

■ On the record of this case we do not believe the late "crystallization" of Appellant's conscientious objector beliefs impugns the sincerity of his beliefs. *See* Ehlert v. United States, 402 U.S. 99, 103, 104, 91 S.Ct. 1819, 28 L.Ed.2d 625 (1971). The timing of Appellant's request for C.O. status did, however, foreclose his Board from considering his request for reclassification and required that Appellant submit to induction and raise his conscientious objector claim through military channels if the claim was to be heard at all, *Ehlert, supra.*

Appellant's selective Service Board did not inform him that he could accept induction and still assert his conscientious objector claim through military channels. In fact, testimony adduced at trial indicated that both local and Kentucky state Selective Service officials were themselves unaware that such right was available to a registrant whose beliefs had crystallized in the period between the issuance of induction orders and his scheduled date of induction.

■ It is Appellant's theory that the Selective Service officials had an affirmative duty to inform him of his post induction rights and that their failure to do so invalidated his induction order. He relies heavily on the language of *Ehlert, supra,* insofar as that decision emphasizes the importance of the post induction avenue of relief for late crystallizers. He also draws this Court's attention to the practice of the Ohio Selective Service system which regularly sends notices to registrants in Appellant's position, informing them of their right to raise C.O. claims once they have been inducted into the armed forces.

Appellant has never asserted that the lack of notice prejudiced him in any way; he has never claimed that had he been given notice he would have consented to induction. In fact, the principles of faith accepted by the Jehovah's Witnesses, upon which Appellant relies for support of his conscientious objector claim, apparently forbid acceptance of induction.

Accordingly, it is apparent that Appellant asks this Court to do no less than adopt a rule of per se invalidity for any induction order issued to a registrant whose conscientious objector beliefs crystallize too late to be examined by a Selective Service Board, and who is not told of his right to pursue his conscientious objector claim after induction into the military. While we believe there is wisdom in the notice policy adopted by the Ohio Selective Service System, we decline to hold that failure to adopt such policy or a substantially equivalent one so infringes the principles of procedural fairness as to require automatic invalidation of induction orders issued by Boards which have not adopted such procedures.

Although we uphold Appellant's conviction today we are also of the opinion that in imposing the maximum prison sentence available under the statute the District Judge abused the sentencing discretion which is confided to him.

In Williams v. New York, 337 U.S. 241, 69 S.Ct. 1079, 93 L.Ed. 1337 (1949), the Supreme Court emphasized the importance of "individualizing sentences." It approved the concept that "the punishment should fit the offender and not merely the crime," adding also: "The belief no longer prevails that every offense in a like legal category calls for an identical punishment without regard to the past life and habits of a particular offender." 337 U.S. at 247, 69 S.Ct. at 1083.

Yet, as we have had occasion to point out in the past, the Courts in one District within this Circuit have persistently disregarded this individual sentencing approach with respect to one category of offenses—violations of the Selective Service laws. With very rare exceptions, the judges in the Eastern District of Kentucky have consistently meted out five year prison sentences to draft offenders regardless of the circumstances of the particular offender. We have had occasion to criticize this practice in the past. United States v. Daniels, 429 F.2d

1273 (6th Cir. 1970); United States v. Daniels, 446 F.2d 967 (6th Cir. 1971); United States v. McKinney, 427 F.2d 449 (6th Cir. 1970); United States v. McKinney (6th Cir. #71–1563, decided December 17, 1971); we have not changed our policy on this matter.

In sentencing Appellant, the District Judge declared:

"I always come back to the proposition that the minimum period of service for a man that is inducted is two years. Of course, these defendants are subject to parole when they have served a third of their sentence, and I assume that most of them make it. I don't know whether that is a rational basis for considering the sentence to be imposed or not, but when you consider a man has just willfully neglected to serve and refused to serve his country, it would seem to be a travesty that he would serve less time at confinement, even under a maximum sentence, than a man who went on and served." (143a).

Although the District Judge took pains to suggest that he was complying with the rule set out by this Circuit in *Daniels (II)*, it is apparent from the remarks just quoted that he continues to apply an inflexible standard to sentencing in draft cases. Such an approach is inconsistent with the teachings of *Williams, supra*, and with our decision in *Daniels*.

While the District Judge also attempted to justify his severe sentence by stating that he found Appellant "insincere" in his beliefs, nothing in the record upon which the District Judge relied would seem to support this statement. On the contrary, the record would seem to disclose a young man whose actions were governed by deeply held religious beliefs. The timing of Appellant's first interest in the Jehovah's Witnesses faith, related by the District Court to Appellant's reclassification as I–A in July would seem much more plausibly traced to his July marriage to a member of the

Witnesses faith. Under her influence Appellant began the training required of an entrant to that faith almost immediately. He has continued his work and in March, 1971 was accepted as a Witness and formally baptized. These events are entirely consistent with Appellant's statements that as a matter of religious conviction he could not accept induction.

■ It is evident that the real basis for sentencing was simply the District Judge's belief that no person charged with a draft offense should serve less time in prison than he would have served in the military had he accepted induction. This is not a proper basis for sentencing.

In past decisions we have called the attention of the District Judges in our Circuit to the practices which have become common in two Districts—the Northern District of Ohio and the Western District of Michigan—where young men of the Jehovah's Witness faith who have refused to comply with draft laws have had their sentences suspended and been placed on probation when they agreed to perform court-ordered alternative service. *See* United States v. Daniels, 429 F.2d at 1274. We commend such policies to the attention of the Judges of the Eastern District of Kentucky, but in light of the differences which set apart Appellant's case from those discussed in *Daniels*, we refrain from indicating that probation is the only appropriate disposition of this case. We do wish to make it clear however, that given the circumstances surrounding the commission of the present offense, a prison term of the length imposed by the District Court seems to us to be inconsistent with the sentencing principles set forth in *Williams, supra*, and in the *Daniels* decisions of this Court.

Accordingly, we affirm Appellant's conviction, but remand for reconsideration of sentence in light of our prior decisions and the concerns expressed in this opinion.