Robert Michael **WOOSLEY**, Defendant-Appellant,

v.

**UNITED STATES of America**, Plaintiff-Appellee.

No. 71–1691.

United States Court of Appeals, Eighth Circuit.

Submitted Nov. 15, 1972.

Decided April 24, 1973.

Dale L. Rollings, St. Charles, Mo., for defendant-appellant.

Robert E. Grote, Asst. U. S. Atty., St. Louis, Mo., for plaintiff-appellee.

Before MATTHES, Chief Judge, VAN OOSTERHOUT, Senior Circuit Judge, and MEHAFFY, GIBSON, LAY, HEANEY, BRIGHT, ROSS and STEPHENSON, Circuit Judges.

BRIGHT, Circuit Judge.

Upon this rehearing *en banc* of the instant appeal [1] we grant relief to Robert Michael Woosley, a Jehovah's Witness, from a five-year prison sentence for refusing induction into the military service in violation of 50 U.S.C. App. § 462.

Appellant was convicted on his guilty plea, which the district court refused to permit him to withdraw. Woosley then appealed the conviction. We sustained this ruling of the district court and affirmed the conviction in United States v. Woosley, 8 Cir., 440 F.2d 1280, cert. denied, 404 U.S. 864, 92 S.Ct. 53, 30 L.Ed. 2d 108 (1971). Thereafter, Woosley petitioned the district court under Rule 35, Fed.R.Crim.P. for reduction of his sentence. The court, without a hearing, denied the petition on November 5, 1971, and on November 23, 1971, again without a hearing, denied appellant's motion to reconsider. Woosley now brings this timely appeal from those orders.[2]

At the time of sentencing, the record showed appellant Woosley to be 19 years of age, married, steadily employed, and a prospective father of a child to be born within two months. His difficulties with the Selective Service System from his sincere religious beliefs as a Jehovah's Witness, which beliefs do not permit him to take up and bear arms against other people nor permit him to perform civilian service as a conscientious objector at the order of a Selective Service Board, an arm of the military in the view of Jehovah's Witnesses. Thus

he did not ask his draft board to classify him as a conscientous objector but did request a ministerial classification. The Board declined this request and thereafter ordered Woosley, a resident of Springfield, Illinois, to report for induction. He declined induction at the induction station in St. Louis, Missouri, and prosecution followed in the United States District Court for the Eastern District of Missouri. The district judge described Woosley as "a fine young man," and from the testimony adduced at the hearing on motion for withdrawal of the guilty plea, the court noted that "[T]his young man should have desired to obtain a conscientious objector status."

Without doubt the evidence available to the district court showed Woosley to be a sincere and religiously motivated conscientious objector who failed to qualify for an exemption from military service solely because his religious tenets forbade him to apply for and perform civilian work as a conscientious objector. Notwithstanding this showing, the court pronounced a five-year sentence, the maximum prison term authorized by law. Our reading of the record discloses no indication of the reasons for the severity of the sentence, except a comment made by the court at an earlier hearing on July 10, 1970, when the court, in response to counsel's plea for probation, stated:

THE COURT: Mr. Woosley, I have examined the probation report and these letters very carefully. I have decided what I'm going to do with you today. I am not going to sentence you today. But I want to be right certain that you understand what you are going to do. *It has been my policy, and I don't intend to change it at this point,* first of all, you have not

---

[1]. Initially, a divided panel denied Woosley relief from this sentence. Woosley v. United States, No. 71–1691, May 26, 1972 [unpublished].

[2]. Pending the disposition of this appeal, a majority of this court authorized Woos-

ley's release from prison on his personal recognizance bond. At the time of his release Woosley had served approximately eight months of his sentence.

even asked for a conscientious objector status. I think the reason is obvious, because, apparently, it is your belief that in the event you are classified as a conscientious objector, you would not serve in any noncombatant work. Is that correct?

DEFENDANT WOOSLEY: That is correct, sir.

THE COURT: So I am going to have you surrender to the custody of the marshal this morning. I am going to have sentencing next Friday at ten o'clock. You think carefully about what you are going to do in this week's time. In the meantime I want to discuss it with your counsel further. [Transcript of proceedings, July 10, 1970 (emphasis added).]

On this appeal, Woosley urges these propositions:

(1) The district court did not resort to appropriate standards in imposing sentence but utilized a "mechanical" and automatic · approach in giving him a maximum prison sentence, as evidenced by the sentencing judge's similar treatment of all selective service violators who refused induction regardless of the circumstances of the violation or of the violator;

(2) That the trial court abused its discretion in not granting Woosley probation and in refusing a hearing on his postconviction application for reduction of the sentence under Rule 35.

We hold Woosley is entitled to relief and remand for resentencing under standards enunciated herein.

I.

## LIMITED REVIEW OF SENTENCES

The federal courts have uniformly agreed that "a sentence imposed by a federal district judge, if within statutory limits, is generally not subject to review." United States v. Tucker, 404 U. S. 443, 447, 92 S.Ct. 589, 591, 30 L.Ed.2d 592 (1972); see, e. g., Gore v. United States, 357 U.S. 386, 393, 78 S.Ct. 1280, 2 L.Ed.2d 1405 (1958); Blockburger v. United States, 284 U.S. 299, 305, 52 S. Ct. 180, 76 L.Ed. 306 (1932); Gurera v. United States, 40 F.2d 338, 340–341 (8th Cir. 1930).[3]

3. Until the jurisdiction of the original circuit courts was transferred to the circuit courts of appeals in 1891, federal appellate courts reviewed sentences under the authority of the Act of March 3, 1879, ch. 176, § 3, 20 Stat. 354. *See* United States v. Wynn, 11 F. 57 (C.C. E.D.Mo.1882); Bates v. United States, 10 F. 92, 96 (C.C.N.D.Ill.1881). Federal courts have disclaimed the authority to review sentences since that statute was repealed, on the assumption that the power of review does not exist without statutory authority. *See* Gore v. United States, 357 U.S. 386, 393, 78 S.Ct. 1280, 2 L.Ed.2d 1405 (1958); Freeman v. United States, 243 F. 353, 357 (9th Cir. 1917). It has been suggested that such statutory authority does exist under 28 U.S.C. § 2106. *See* Smith v. United States, 273 F.2d 462, 468–469 (10th Cir. 1959) (Murrah, J., dissenting); United States v. Rosenberg, 195 F.2d 583, 604–607 (2d Cir.), cert denied, 344 U.S. 838, 73 S.Ct. 20, 97 L.Ed. 652, rehearing denied, 344 U.S. 889, 73 S.Ct. 134, 97 L. Ed. 687 (1952).

A few courts, without referring to statutory authority, have indicated that federal appellate courts possess the power to review a sentence imposed within the statutory maximum if it appears that the trial judge plainly abused his discretion. *See* United States v. Hetherington, 279 F.2d 792, 796 (7th Cir.), cert. denied, 364 U.S. 908, 81 S.Ct. 271, 5 L.Ed.2d 224 (1960); Livers v. United States, 185 F. 2d 807, 809 (6th Cir. 1950); Tincher v. United States, 11 F.2d 18, 21 (4th Cir.), cert. denied, 271 U.S. 664, 46 S.Ct. 475, 70 L.Ed. 1139 (1926); Goldberg v. United States, 277 F. 211, 220 (8th Cir. 1921).

Finally, the Sixth and Seventh Circuits have reviewed and vacated sentences imposed within the statutory maximum. *See* United States v. McKinney, 466 F.2d 1403 (6th Cir. 1972); United States v. Charles, 460 F.2d 1093 (6th Cir. 1972); United States v. Daniels, 446 F.2d 967 (6th Cir. 1971); United States v. Wiley, 278 F.2d 500 (7th Cir. 1960); cf. United States v. McCoy, 139 U.S.App.D.C. 60, 429 F.2d 739 (1970); Leach v. United States, 118 U.S.App.D.C. 197, 334 F.2d 945 (1964). The Second Circuit has examined what it has termed the "integrity" of the sentencing process. McGee v.

This circuit has generally adhered to the principle that a sentence within statutory limits should not be disturbed if the district court has exercised discretion in imposing the sentence. United States v. Smallwood, 443 F.2d 535, 543, cert. denied, 404 U.S. 853, 92 S.Ct. 95, 30 L.Ed.2d 93 (1971); United States v. Dennison, 437 F.2d 439, 440 (1971); Cassidy v. United States, 428 F.2d 585, 588 (1970). Yet, in fact, this court has undertaken to review the severity of sentences following a district court's denial of a reduction under Rule 35, Fed. R.Crim.P., although we found no abuse of discretion on the part of the district court. Hood v. United States, 469 F.2d 721 (8th Cir. 1972); United States v. Anderson, 466 F.2d 1360 (8th Cir. 1972).[4] If we possess the power to review the severity of the sentence or the appropriateness of the sentencing procedure, this appeal from the denial of relief under Rule 35 properly places these issues before us.

■ The Supreme Court support for the rule that federal appellate courts generally may not review a sentence is pure dicta, 2 C. Wright, Federal Practice and Procedure § 533 at 451–52 (1969). See, e. g., Tucker, supra, 404 U.S. 443, 92 S.Ct. 589, 30 L.Ed.2d 592; Gore, supra, 357 U.S. 386, 78 S.Ct. 1280, 2 L.Ed.2d 1405; Blockburger, supra, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306. However, in a contempt case, Yates v. United States, 356 U.S. 363, 78 U.S. 766, 2 L.Ed.2d 837 (1958), the Court not only reviewed the severity of the sentence imposed by the district court, but also set it aside and imposed its own sentence. The Court observed:

Reversing a judgment for contempt because of errors of substantive law may naturally call for a reduction of the sentence based on an extent of wrongdoing found unsustainable in law. Such reduction of the sentence, however, normally ought not be made by this Court. It should be left, on remand, to the sentencing court. And so, when this Court found that only a single offense was committed by petitioner, and not eleven offenses, it chose not to reduce the sentence but to leave this task, with gentle intimations of the necessity for such action, to the District Court. However, when in a situation like this the District Court appears not to have exercised its discretion in the light of the reversal of the judgment but, in effect, to have sought merely to justify the original sentence, this Court has no alternative except to exercise its supervisory power over the administration of justice in the lower federal courts by setting aside the sentence of the District Court.

* * * Not unmindful of petitioner's offense, this Court is of the view, exercising the judgment that we are now called upon to exercise, that the time that petitioner has already served in jail is an adequate punishment * * * and is to be deemed in satisfaction of the new sentence herein ordered formally to be imposed. Accordingly, the writ of certiorari is granted, and the judgment of the Court of Appeals is vacated and the cause remanded to the District Court with directions to reduce the sentence to the time petitioner has already

---

United States, 465 F.2d 357 (1972); cf. United States v. Brown, 470 F.2d 285 (1972). The First Circuit has expressed some dissatisfaction with the severity of a sentence in a selective service case. United States v. Walker, 469 F.2d 1377 (1972).

4. Some question may be raised whether the severity of a sentence, if reviewable under any circumstances, should be raised on direct appeal or by post-appeal applica-

tion for relief under Rule 35, Fed.R. Crim.P. Both Hood and Anderson raised the sentence question on their second appeal, as does Woosley here. The government raises no question as to the appropriateness of the appeal. Since a trial court retains the power under Rule 35 to reduce a sentence within 120 days after final direct review of a conviction, the sentence does not become firmly fixed until the trial court has acted or declined to act under Rule 35.

been confined in the course of these proceedings. [*Id.* at 366–367, 78 S.Ct. at 768–769.]

■ From our review of the cases, we think it clear that the repetitive pronouncement of the general rule of unreviewability of sentences imposed within statutory limits does not insulate from review *every* sentence within statutory limits.

## II.

### MECHANICAL SENTENCE

■ We believe that we have the power to examine and review a sentence if it is shown to have been imposed on a mechanical basis. Appellant asserts that the district judge in referring to "my policy" in the sentencing proceeding held on July 10, 1970, (*see* p. 140, *supra*) clearly meant that he sentenced all defendants convicted of refusing induction to a maximum five-year prison term. Although the record does not clearly disclose this meaning, counsel for appellant states in his brief that his examination of the district court records uncovered no selective service case where this district judge imposed less than the maximum term of imprisonment for refusing induction under § 462. At oral argument the United States Attorney referred to his research into sentences pronounced by the district judge for defendants who have refused induction into military service. Restricting consideration to sentences in the Eastern Division of Missouri, we understand the statements of the government attorney to indicate that this sentencing judge sentenced eight violators who refused induction to maximum prison terms, although one sentence permitted possible early parole under § 4208(a). Clearly, the judge's policy in the St. Louis (Eastern) Division called for five-year sentences for all young men convicted of refusing induction into the military.

The general rule precluding review of a sentence within statutory limits is not dispositive of the problem we confront here. We do not deal here with a sentence imposed in the informed or sound discretion of a trial judge after consideration of all the circumstances surrounding the crime. *See Tucker, supra,* 404 U.S. at 447, 92 S.Ct. 589; Williams v. Oklahoma, 358 U.S. 576, 585, 79 S.Ct. 421, 3 L.Ed.2d 516 (1959). Instead, we deal with a predetermined sentence resting upon a policy followed by the trial judge in certain selective service cases. A mechanical approach to sentencing plainly conflicts with the sentencing guidelines announced by the Supreme Court in Williams v. New York, 337 U.S. 241, 69 S.Ct. 1079, 93 L.Ed. 1337 (1949), and Williams v. Oklahoma, *supra,* 358 U.S. 576, 79 S.Ct. 421, 3 L.Ed.2d 516. In Williams v. New York, *supra,* the Court stated:

A sentencing judge * * * is not confined to the narrow issue of guilt. His task within fixed statutory or constitutional limits is to determine the type and extent of punishment after the issue of guilt has been determined. * * *

Undoubtedly the New York statutes emphasize a prevalent modern philosophy of penology that the punishment should fit the offender and not merely the crime. * * * The belief no longer prevails that every offense in a like legal category calls for an identical punishment without regard to the past life and habits of a particular offender. [337 U.S. at 247, 69 S.Ct. at 1083.]

Later, in Williams v. Oklahoma, *supra,* 358 U.S. at 585, 79 S.Ct. at 427, the Court reaffirmed these principles, saying:

Necessarily, the exercise of a sound discretion in [sentencing] required consideration of all the circumstances of the crime, for "[t]he belief no longer prevails that every offense in a like legal category calls for an identical punishment. . . ." Williams v. New York, *supra,* [337 U.S.] at 247 [69 S.Ct. at 1083, 93 L.Ed. 1337]. In discharging his duty of imposing a proper sentence, the sentencing judge is authorized, if not required, to con-

sider all of the mitigating and aggravating circumstances involved in the crime.

A mechanical approach to sentencing, such as that used here, ignores the Supreme Court's decree that sentences be tailored to fit the offender. We reject the view that in all cases the trial judge's action is immune from review simply because we do not ordinarily review sentences within statutory limits. Although a trial judge possesses wide discretion in sentencing, he is not free to ignore sentencing guidelines established by the Supreme Court.

The Sixth Circuit has reached the same conclusion. United States v. McKinney, 466 F.2d 1403 (1972); United States v. Charles, 460 F.2d 1093 (1972); United States v. Daniels, 446 F.2d 967 (1971). Before imposing sentence in *Daniels*, the trial judge said that he had imposed the maximum sentence in selective service cases for over 30 years. Faithful to his policy, the trial judge then imposed the maximum sentence. The Sixth Circuit held that it did possess the power to review such a sentence. In vacating the sentence and remanding for resentencing, the court commented:

[W]e are seriously perturbed about the trial judge's avowal that since 1938 or 1939, his court has * * * sentenced to five years in the penitentiary every young man who has refused to obey an order of a draft board. * * *

A trial court which fashions an inflexible practice in sentencing contradicts the judicially approved policy in favor of "individualizing sentences." Williams v. New York, 337 U.S. at 248 [69 S.Ct. 1079, 93 L.Ed. 1337] * * *. Moreover, such an inflexible sentencing practice is incompatible with the United States Supreme Court's declaration in Williams v. Oklahoma * * *. [446 F.2d at 971.]

In *Charles, supra,* 460 F.2d at 1094–1095, the court noted its problems with sentencing procedures in selective service cases in one of its districts and observed:

Yet, as we have had occasion to point out in the past, the Courts in one District within this Circuit have persistently disregarded this individual sentencing approach with respect to one category of offenses—violations of the Selective Service laws. With very rare exceptions, the judges in the Eastern District of Kentucky have consistently meted out five year prison sentences to draft offenders regardless of the circumstances of the particular offender. We have had occasion to criticize this practice in the past. United States v. Daniels, 429 F.2d 1273 (6th Cir. 1970); United States v. Daniels, 446 F.2d 967 (6th Cir. 1971); United States v. McKinney, 427 F.2d 449 (6th Cir. 1970); United States v. McKinney [466 F.2d 1403 (6th Cir. 1971)]; we have not changed our policy on this matter.

In *McKinney, supra,* 466 F.2d 1403, the court itself set the sentence after its mandates on two earlier remands were ignored in United States v. McKinney, 427 F.2d 449 (6 Cir. 1970) and United States v. McKinney, 466 F.2d 1403 (6 Cir. 1971).

We agree with the reasoning of the *Daniels* case and its progeny. The rule against review of sentences is founded primarily upon the premises that a trial judge, who has the best opportunity to observe the defendant and evaluate his character, will exercise discretion in imposing sentence. *See* Briscoe v. United States, 129 U.S.App.D.C. 146, 391 F.2d 984, 986 (1968). On that assumption we ordinarily defer to the trial court's judgment. However, where as here, the district court has not exercised discretion in imposing sentence, there is no reason for us to defer to the trial court's judgment. In reviewing such a sentence, we would not be usurping the discretion vested in trial judges; rather we would be according the defendant the judicial discretion to which

he is entitled. *See* Gryger v. Burke, 334 U.S. 728, 734, 68 S.Ct. 1256, 92 L.Ed. 1683 (1948) (Rutledge, J., dissenting).

## III.

## FAILURE TO GRANT PROBATION

What we have already said makes it abundantly clear that by resorting to "policy" in sentencing, the district judge gave no consideration to Woosley's claim for probation.[5]

Appellant had earlier stated that, because of his religious beliefs, he could not comply with a draft board order to work in alternative service as a conscientious objector, but that he would perform such service in compliance with a court order. Such a request is not unusual from Jehovah's Witnesses who find their religious tenets in conflict with requirements of Selective Service laws. Judge Solomon, as Chief Judge of the United States District Court in Oregon, adopted and enunciated an enlightened solution.

The great majority [of Selective Service violators placed on probation] are Jehovah's Witnesses who were classified as conscientious objectors. They refused to report for alternative service because they regard the Selective

---

5. In requesting probation, the transcript discloses the following:

[THE COURT:] Do you know of any reason why sentence should not be imposed this morning?

MR. JACOBS [Attorney for Woosley]: I know of none, Your Honor.

THE COURT: All right. Will you stand up, Mr. Woosley?

MR. JACOBS: I would like to state, Your Honor, that based upon the Court's finding I would make a motion for presentence investigation and leave to apply for probation.

THE COURT: I don't think that will be necessary.

Mr. Woosley, do you have anything to say to the Court before sentence is imposed?

THE WITNESS: No, Your Honor.

THE COURT: Does your attorney have anything further to say?

MR. JACOBS: I would like to ask the defendant one question, Your Honor.

(Thereupon, there was a conference between the defendant and his counsel out of the hearing of the reporter and off the record.)

MR. JACOBS: Your Honor, I would, in renewal of my motion for probation, like to state that the defendant is, as the Court is well aware, an ordained minister and has pursued it diligently except to the extent that he is necessarily—

THE COURT: No, I'm not well aware that he is an ordained minister. That is his notion of what he is. But it does not comply with what the rules and regulations of the Selective Service System require. I am aware that he is a fine young man. And I regret very much that he is making this decision. But it is his decision.

MR. JACOBS: Well, Your Honor—

THE COURT: Go ahead.

MR. JACOBS: The decision that brings him here is one of refusing induction under the Selective Service Act. There is a 1–A registrant. His classification is one that he has strenuously opposed. The Selective Service file reflects that he attempted to obtain a ministerial classification.

THE COURT: I understand that.

MR. JACOBS: I think there would be little question that his refusal to induction in the Armed Forces is because of his conscientious conviction that he will not take up arms and bear arms against other people. On the question of his conscientious objection I think it should be perfectly clear that it is not a position of the Jehovah's Witnesses that they will not do hospital work or something of a humane nature. The repugnant nature of it is doing it under the forcible order of a Selective Service Board which is appointed primarily under a military act. Therefore their conscience carries to that extent. Their entire life, however, is devoted toward performing service of a ministerial and humane nature. If there ever was a case which warranted a person who is not a threat to the public or a danger to the public, which would warrant probation, I would certainly think it is one in which the background of the person is as thorough and clear and as much of a contribution to the public welfare as it has been on the part of this man.

THE COURT: Have you anything further?

MR. JACOBS: No, Your Honor.

THE COURT: On your plea of guilty this Court will sentence you to five years in the custody of the Attorney General. Probation will be denied. [Tr. 18–21.]

Service System as an arm of the military. To perform work directed by the military would compromise their religious convictions.

A few years ago, I stumbled onto the idea that Jehovah's Witnesses would do alternative service if I ordered it because I am not in military. Romans XIII teaches that the orders of those in civil authority are equivalent to the orders of God.

I know that Selective Service is happy about this solution, and a number of courts throughout the country are using the same technique. [Solomon, Sentences in Selective Service and Income Tax Cases, 52 F.R.D. 481, 487 (1970).]

See Daniels, supra, 446 F.2d at 969, 972.

Judicial recognition has been given to statistical evidence showing "[that] Jehovah's Witness violators have regularly been included in the group toward whom an increasing number of judges have shown a growing lenience." United States v. McCord, 466 F.2d 17, 20 (2d Cir. 1972).

The Supreme Court long ago made clear that federal appellate courts have the power to review a trial judge's refusal to grant probation. Burns v. United States, 287 U.S. 216, 221–223, 53 S.Ct. 154, 77 L.Ed. 266 (1932). In Burns, the Court described the standard for appellate review as follows:

> The question is simply whether there has been an abuse of discretion and is to be determined in accordance with familiar principles governing the exercise of judicial discretion. That exercise implies conscientious judgment, not arbitrary action. * * * It takes account of the law and the particular circumstances of the case and is "directed by the reason and conscience of the judge to a just result." * * * While probation is a matter of grace, the probationer is entitled to fair treatment, and is not to be made the victim of whim or caprice. [Id. at 222–223, 53 S.Ct. at 156.]

This circuit has acknowledged the power of appellate courts to review a trial judge's refusal to grant probation. See United States v. Alarik, 439 F.2d 1349, 1351 (8th Cir. 1971); Berra v. United States, 221 F.2d 590, 598 (8th Cir. 1955), aff'd, 351 U.S. 131, 76 S.Ct. 685, 100 L.Ed. 1013 (1956). In other circuits, cases acknowledging this power of review are legion.[6]

■ Under these circumstances, the trial judge's refusal to consider probation as a reasonable alternative in his sentencing procedures was error.

## IV.

### EXCESSIVENESS OF SENTENCE

Aside from the district court's *failure to utilize* its discretion in the sentencing process, *i. e.*, its imposition of five-year sentences as a mechanical and automatic policy, we next consider whether the imposition of a maximum sentence was in itself an *abuse* of discretion under the circumstances presented here.

---

6. *See* United States v. Birnbaum, 402 F. 2d 24, 30 (2d Cir. 1968), cert. denied, 394 U.S. 922, 89 S.Ct. 1181, 22 L.Ed.2d 455 (1969); United States v. White, 147 F. 2d 603 (3d Cir. 1945); Mann v. United States, 218 F.2d 936, 939 (4th Cir. 1955); Hoopengarner v. United States, 270 F.2d 465, 472 (6th Cir. 1959); United States v. Wiley, 267 F.2d 453, 455–456 (7th Cir. 1959); United States v. Borgis, 182 F.2d 274, 277 (7th Cir. 1950); Burr v. United States, 86 F.2d 502, 503 (7th Cir. 1936), cert. denied, 300 U.S. 664, 57 S.Ct. 507, 81 L.Ed. 872 (1937); United States v. Taylor, 449 F. 2d 117, 118 (9th Cir. 1971); Whitfield v. United States, 401 F.2d 480, 482 (9th Cir. 1968), cert. denied, 393 U.S. 1026, 89 S.Ct. 630, 21 L.Ed.2d 570 (1969); Longknife v. United States, 381 F.2d 17, 19 (9th Cir. 1967), cert. denied, 390 U.S. 926, 88 S.Ct. 859, 19 L.Ed.2d 987 (1968); Jordan v. United States, 370 F.2d 126, 129 (10th Cir. 1966), cert. denied, 386 U.S. 1033, 87 S.Ct. 1484, 18 L.Ed.2d 595 (1967); Dodd v. United States, 213 F.2d 854, 855 (10th Cir. 1954); Sullivan v. United States, 212 F.2d 125, 128 (10th Cir.), aff'd, 348 U.S. 170, 75 S.Ct. 182, 99 L.Ed. 210 (1954); Humes v. United States, 186 F.2d 875, 878 (10th Cir. 1951).

Appellant's crime was a crime of conscience. He expressed his willingness to serve his country in a civilian capacity if ordered to do so by the district judge. The privilege of civilian service is afforded others "who, by reason of religious training and belief, [are] opposed to participation in war in any form." 50 U.S.C. App. § 456(j). Thus, Woosley's transgression rested upon a technical violation of the law. The circumstances of the crime and the character of the criminal dictated leniency of treatment but produced the maximum prison sentence.

An examination of cases in which federal appellate courts have reviewed sentences falling within the statutory maximum discloses the underlying fact in each was a sentence which was greatly excessive under traditional concepts of justice or was manifestly disproportionate to the crime or the criminal. *McKinney, supra,* 466 F.2d 1403; *Daniels, supra,* 446 F.2d 967; United States v. Wiley, 278 F.2d 500 (7th Cir. 1960); *see* United States v. Walker, 469 F.2d 1377 (1st Cir. 1972); McGee v. United States, 465 F.2d 357 (2d Cir. 1972); *Charles, supra,* 460 F.2d 1093; United States v. McCoy, 139 U.S.App.D.C. 60, 429 F.2d 739 (1970). Other cases have indicated that the courts possess the power to review a sentence when there has been a gross abuse of discretion. *Hood, supra,* 469 F.2d 721, 722; United States v. King, 420 F.2d 946, 947 (4th Cir.), cert. denied, 397 U.S. 1017, 90 S. Ct. 1253, 25 L.Ed.2d 432 (1970); United States v. Weiner, 418 F.2d 849, 851 (5th Cir. 1969); United States v. Latimer, 415 F.2d 1288, 1290 (6th Cir. 1969); United States v. Holder, 412 F.2d 212, 214–215 (2d Cir. 1969). *See generally,* 2 C. Wright, Federal Practice and Procedure § 533 (1969). In *Holder, supra,* 412 F.2d 212, 214–215, the court noted:

> If the sentence could be characterized as so manifest an abuse of discretion as to violate traditional concepts, it is possible that we might, pursuant to our power to supervise the administration of justice in the circuit, overturn our long established precedents of non-intervention and intervene.

■■ We hold that we possess the power to review the severity of a criminal sentence within narrow limits where the court has manifestly or grossly abused its discretion. This is such a case. The severity of the sentence shocks the judicial conscience. The sentence greatly exceeds penalties usually exacted against Jehovah's Witnesses, and the record completely fails to justify, nor has the district judge undertaken to explain, the imposition of a maximum penalty under the circumstances presented here.

Moreover, we take judicial notice of statistical data showing that in the year in which sentence was first assessed (1970) and in the year in which the district court refused Rule 35 relief (1971), most convicted violators of the draft laws received probation, and only a minute number of offenders received the maximum prison terms (4.4 percent in 1970; 2.8 percent in 1971).[7] These statistics disclose nothing of the character of the offender, but they do indicate the increasing tendency of the courts to afford leniency to a high percentage of violators of the draft laws.

We find it difficult to conceive of a situation offering more compelling circumstances to justify leniency than that

---

7. Federal Offenders in the United States District Courts, Administrative Office of the U. S. Courts at 188 (1970) (containing criminal sentence analysis 1967–71).

We note the wealth of statistical data collected from the United States courts relating to sentencing by categories of federal crimes. *See, e. g.,* Annual Report of the Director, Administrative Office of the United States Courts (1972). It would seem that if such data were collected and disseminated in a more useable form, it might serve as a helpful guide to sentencing judges to avoid greatly disparate sentences for offenders of comparatively equal status. *See generally* Frankel, Lawlessness in Sentencing, 41 Cincinnati L.Rev. 1 (1972) (discussion of sentencing in the United States).

in the instant case. Referring to a similarly situated offender, the Sixth Circuit said in *Daniels, supra,* 446 F.2d at 972:

> The imprisonment of Appellant can hardly be deemed helpful in reforming a young man of concededly "good character" and "model behaviour." Imprisonment cannot serve as protection for society because the immediate release of Appellant poses no risk to society's safety. Moreover, disciplining or punishing the Appellant by imprisonment would seem to be an inappropriate rationale for sentencing where, as here, a young man has devoutly adhered to his religious beliefs without impeding the rights of others. Finally, under the limited factual circumstances of this case, the issuance of an order probating the Appellant subject to his performance of the identical work demanded of him by the Selective Service is not the kind of sentencing which would induce widespread disobedience of the orders of local Selective Service boards.

■ We can find no basis by any rational criteria to justify Woosley's punishment in this case. Neither society nor the individual stands to gain any benefit therefrom. Nor is there a deterrent effect since Jehovah's Witnesses have stood steadfastly by their religious convictions, whatever the potential sentence. The broad and unreviewable discretion possessed by federal district courts in matters of sentencing does not extend to the meting out of punishment manifestly disproportionate to the nature of the crime and the character of the criminal.

## V.

We believe it appropriate to remand this case to the district court for resentencing. The district judge is an experienced and able trial judge. We know that he will give Woosley fair consideration under the standards promulgated here. In selective service cases, the district judge may have followed a policy initiated by other judges, and this court has not previously commented upon that policy. Moreover, the district judge may appropriately evaluate Woosley's changed family circumstances which may disclose additional considerations dictating leniency of treatment.[8]

Reversed and remanded. Release bond to continue until final disposition.

MATTHES, Chief Judge (concurring).

After weighty consideration of all relevant circumstances I have concluded to concur in the majority opinion.

Recognizing the firmly entrenched rule that appellate courts *generally* will not interfere with the sentence imposed if it is within statutory limits, I am nevertheless persuaded to conclude that, like many rules, it has exceptions. This case is the exceptional one justifying remedial action.

It is hardly debatable that implicit in the imposition of a sentence is the exercise of sound discretion by the sentencing judge. Such exercise encompasses consideration of all relevant factors such as the nature of the offense, the history and background of the defendant, and of course the interest and concerns of society, to mention only a few.

I have been unable to escape the conclusion that the maximum sentence imposed here was the product of an inflexible policy rigidly applied to all offenders of the Selective Service Laws. Such a policy is difficult to defend and condone just as imposition of the maximum sentence on every Dyer Act violator regardless of attending circumstances would be subject to condemnation.

---

8. Appellant's counsel has filed a petition in this court stating that appellant's wife was killed in an automobile accident on April 29, 1972, while enroute to the federal penitentiary to visit appellant. Thus, according to the petition, appellant's infant son is "in temporary custody of relatives who are not properly equipped to continue caring for the child."

VAN OOSTERHOUT, Senior Judge, with whom MEHAFFY and STEPHENSON, Circuit Judges, join (dissenting).

I respectfully dissent. I would affirm the trial court's order denying relief under Rule 35. The sentence of five-years imprisonment was imposed upon the defendant following the acceptance of his voluntary plea of guilty to a charge of failure to submit for induction in violation of 50 U.S.C. App. § 462. This is the maximum penalty provided for the offense committed.

The majority opinion concedes that this court, as well as others, has repeatedly held that a sentence imposed by a district judge which is within statutory limits is not subject to review. In Gurera v. United States, 40 F.2d 338, 340–341 (8th Cir. 1930), this court held:

"If there is one rule in the federal criminal practice which is firmly established, it is that the appellate court has no control over a sentence which is within the limits allowed by a statute. If Congress had intended to change that rule in regard to violations of the liquor laws, we would have expected a very clear and definite expression of that intent and a workable expression of the rules which should guide the trial courts in assessing punishments and the appellate courts in reviewing such assessments."

The Supreme Court in the recent case of United States v. Tucker, 404 U.S. 443, 447–448, 92 S.Ct. 589, 591, 30 L.Ed.2d 592 (1972), holds:

"It is surely true, as the government states, that a trial judge in the federal judicial system generally has wide discretion in determining what sentence to impose. . . . The government is also on solid ground in asserting that a sentence imposed by a federal district judge, if within statutory limits, is generally not subject to review. Gore v. United States, 357 U.S. 386, 393 [78 S.Ct. 1280, 1284, 2 L.Ed.2d 1405]. Cf. Yates v. United States, 356 U.S. 363 [78 S.Ct. 766, 2 L.Ed.2d 837]."

The Tucker Court goes on to hold that a remand for resentencing was proper because the record showed that the trial court at the time of the sentencing was not aware of the fact that two prior convictions of the defendant called to its attention were constitutionally infirm because the defendant was not represented by counsel in such cases.

Subsequent to Tucker this court in Hood v. United States, 469 F.2d 721, 722 (8th Cir. 1972), summarily affirmed the trial court's denial of a motion to reduce sentence, stating:

"In United States v. Tucker, 404 U. S. 443, 447, 92 S.Ct. 589, 591, 30 L. Ed.2d 592 (1972) the Supreme Court observed: ' * * * that a sentence imposed by a federal district judge, if within statutory limits, is generally not subject to review.' We fail to find any abuse of discretion on the part of the trial court in denying the motion to modify or set aside the sentence."

In United States v. McCord, 466 F.2d 17 (2d Cir. 1972), the court affirmed the denial of a Rule 35 motion to reduce a sentence imposed on a selective service violation. In doing so, the court cites and relies upon Tucker. The court recognizes that many judges have pronounced sentences in Jehovah Witness type draft cases of the type advocated by the majority opinion and holds that such evidence does not require a remand for resentencing.

There is no statute nor rule which expressly confers jurisdiction on Courts of Appeal to review sentences within statutory limits imposed upon a lawful conviction. Legislation to confer such appellate jurisdiction has been frequently proposed but has not yet been enacted. See ABA project "Appellate Review of Sentences", tentative draft 1967, pp. 86–90.

In Gore v. United States, 357 U.S. 386, 393, 78 S.Ct. 1280, 1285, 2 L.Ed.2d

1405 (1958), the Court in affirming an order denying a petition to review sentence imposed within statutory limits states and holds:

"In effect, we are asked to enter the domain of penology, and more particularly that tantalizing aspect of it, the proper apportionment of punishment. Whatever views may be entertained regarding severity of punishment, whether one believes in its efficacy or its futility, see Radzinowicz, A History of English Criminal Law: The Movement for Reform, 1750–1833, *passim,* these are peculiarly questions of legislative policy. Equally so are the much mooted problems relating to the power of the judiciary to review sentences. First the English and then the Scottish Courts of Criminal Appeal were given power to revise sentences, the power to increase as well as the power to reduce them. See 7 Edw. VII, c. 23, § 4(3); 16 & 17 Geo. V, c. 15, § 2(4). *This Court has no such power.*" (Emphasis added.)

As set out in the majority opinion, we have in a number of cases purported to review a district court's denial of a Rule 35 motion to reduce a sentence but have denied relief on the basis that there has been no abuse of discretion. Such holding is technically inconsistent with the established law that sentences imposed within the statutory limit are not reviewable. However, the result is the same.

8A Moore's Federal Practice 2d Ed. § 35.02(4) states:

"Since the motion for reduction of sentence is a plea for leniency, decision on the motion is as close to being a matter of pure discretion as any other under the Rules, with the exception of the sentence itself. It might be argued that such a determination should therefore not be reviewable by way of appeal. Apparently, no court has gone this far, although reversal of

an order denying reduction is extremely rare."

If we assume for the purposes of this case without so deciding that the abuse of discretion standard applies, we are satisfied that the defendant has failed to establish that the court abused its discretion in imposing the five-year sentence. This is not a case where the court acted on any relevant misinformation in imposing the sentence. The record reflects that the court was fully informed on all factors relevant to appropriate punishment. He had carefully considered the probation report, he knew defendant had sought a ministerial classification which was rejected by the Draft Board, and that the defendant had never applied for a conscientious objector classification. The court was aware of the reasons assigned by the defendant for not applying for the conscientious objector classification and stated that he recognized that the defendant was a fine young man.

A wide discretion is vested in the trial court with respect to imposition of sentence within statutory limits. A heavy burden rests on a party asserting abuse of discretion. A reviewing court is not justified in substituting its discretion for that of the trial court who had the benefit of seeing and hearing the defendant. See 5A C.J.S. Appeal and Error § 1583; United States v. McCord, *supra;* McGee v. United States, 462 F. 2d 243 (2d Cir. 1972); Burns v. United States, 287 U.S. 216, 222–223, 53 S.Ct. 154, 77 L.Ed. 266 (1932).

In Delno v. Market St. Ry. Co., 124 F.2d 965, 967 (9th Cir. 1942), the court in defining discretion states:

"Discretion, in this sense, is abused when the judicial action is arbitrary, fanciful or unreasonable, which is another way of saying that discretion is abused only where no reasonable man would take the view adopted by the trial court. If reasonable men could

differ as to the propriety of the action taken by the trial court, then it cannot be said that the trial court abused its discretion."

In our present case there is nothing in the record to indicate that the trial court acted upon any misinformation with respect to the defendant's character and background. Judges vary greatly as to sentences imposed, not only in selective service cases but in all types of cases, particularly those involving nonviolent crimes such as income tax evasion, and embezzlement. Defendant's crime is more than a technical one. His plea of guilty admits all essential elements of the offense charged. Defendant has no constitutional right to a conscientious objector classification or to be excused from military service obligations. The exemption of conscientious objectors from military service is a matter of legislative grace and does not rise to a constitutional command. United States v. Crocker, 308 F.Supp. 998 (D.Minn.), aff'd 435 F.2d 601 (8th Cir. 1971).

Probation for a convicted defendant is a matter of grace and not a matter of right. No defendant has an absolute right to probation. Burns v. United States, 287 U.S. 216, 220, 53 S.Ct. 154, 77 L.Ed. 266; United States v. Alarik, 439 F.2d 1349, 1351 (8th Cir. 1971).

Defendant has failed to establish his right to exemption from military service by failing to follow the reasonable procedures prescribed by the statutes and regulations for asserting exemption. Defendant by failing to report for military service as ordered has created unnecessary confusion in the administration of the draft law and has made it necessary for some other person to take his place and expose himself to the possible hazard of Vietnam conflict.

While imprisonment may not be necessary to rehabilitate the defendant, the deterrent effect upon others is always a proper item for consideration in imposing sentence. See Williams v. New York, 337 U.S. 241, 248–249 n. 13, 69 S.

Ct. 1079, 93 L.Ed. 1337. It cannot fairly be said on the basis of the record in this case that the public interest does not require a fair enforcement of the selective service laws and that reasonable men could not differ on the propriety of the sentence imposed.

The issue of mechanical sentencing discussed by the majority was never presented in the trial court and hence such court had no opportunity to consider the issue. Issues not raised in the trial court cannot properly be considered on appeal. Smith v. American Guild of Variety Artists, 368 F.2d 511, 514 (8th Cir. 1966).

In any event, I believe that the majority has misconceived the trial court's statement with respect to his policy. There is nothing in the court's statement which explicitly describes the policy to which he refers. Inasmuch as sentence has been deferred, it would appear that the policy was to give the defendant an opportunity to reconsider reporting for induction before sentence was imposed. There is nothing in the record to indicate that the defendant has been denied due process in connection with his sentencing or Rule 35 proceedings. Defendant and his attorney were afforded a full opportunity to present anything they desired to support the claim for leniency and probation made prior to sentence. The present petition and the application for reconsideration do not reveal that the defendant had anything to present which had not previously been presented to the court in connection with his pre-sentence request for parole. Under such circumstances the trial court did not abuse its discretion in not affording a hearing.

The result reached by the majority is supported by the Sixth Circuit cases cited and relied upon. For reasons hereinabove stated, I do not agree with the reasoning upon which such decisions are based. The majority opinion departs from the long-established rule in effect in this circuit and generally elsewhere

that sentences within the statutory limits are not subject to appellate review and in effect opens the gate to appellate review of all sentences. Such a drastic change in the law in my view requires appropriate Congressional action. Gore v. United States, *supra*.

I would affirm the order denying defendant's Rule 35 motion.[1]

---

1. In 2 Wright Federal Practice and Procedure § 533, p. 455, the following appears: "Reasonable men may well wonder whether the greater uniformity in sentences expected from appellate review will in fact materialize, and whether it will simply add a new burden to appellate courts that are already overworked."

Additional problems presented by appellate review of sentencing are ably set out in United States v. Wiley, 184 F. Supp. 679 (N.D.Ill.1960).