**UNITED STATES of America,**
**Appellee,**

v.

**Linda H. SCHWARZ, Appellant.**

**No. 1152, Docket 74–1455.**

United States Court of Appeals,
Second Circuit.

Argued June 27, 1974.

Decided July 23, 1974.

Lawrence Stern, New York City (Diller & Schmukler, Howard J. Diller, New York City, on the brief), for appellant.

Joan S. O'Brien, Asst. U. S. Atty. (David G. Trager, U. S. Atty. for the E. D. N. Y., Raymond J. Dearie, Asst. U. S. Atty., on the brief), for appellee.

Before MOORE and FEINBERG, Circuit Judges, and PALMIERI, District Judge.*

PER CURIAM:

The appellant, a first offender, was sentenced to four years imprisonment pursuant to 18 U.S.C. § 4208(a)(2) and three years special parole.

It is common ground that the appellant is a young lady with a stable family background. She was 25 years of age at the time of the plea and sentence and had had no previous contacts with law enforcement authorities. An honor student and a college graduate, the appellant was the product of an intact, financially secure home. She was engaged to be married and has been married during the course of these proceedings. She made a full acknowledgment of her offense and cooperated with the Government. There was no evidence that she was connected with any organized criminal activity. On February 19, 1974, her constitutional rights to indictment and trial were waived and a plea of guilty was entered to a one count information.

■■■ Concededly, the appellant was eligible by virtue of her age and as a "young adult offender," 18 U.S.C. § 4209, for the treatment provided under the Federal Youth Corrections Act, 18 U.S.C. § 5005 et seq., and could have been sentenced pursuant to its provisions. While the district court acted within the scope of its discretionary powers, 18 U.S.C. § 4209, in rejecting her plea to be sentenced as a "young adult offender," we are constrained to disapprove of the manner in which this was done and to remand the case for resentence before another judge.

During the rather extended colloquy attendant upon her sentencing proceedings, the district court made much of the fact that the appellant came from a privileged background rather than from "the ghetto" and was not the "usual dumb kid." The court referred to her as one "far above the average, so that she knew what she was doing." Understandably, the appellant has been left with the impression, forcefully argued to us by her counsel, that her intelligence and privileged background were counted against her as pejorative factors disentitling her to treatment under the Youth Corrections Act.[1] The court's explication, coupled with its express refusal of what appears to have been a joint request of defense counsel and the United States Attorney that the court make a specific finding that appellant

---

* Of the United States District Court for the Southern District of New York, sitting by designation.

[1]. This conclusion is supported by Judge Travia's comments at the time of sentence:

"[S]he's not the ordinary so-called individual who . . . doesn't know the nature of her act or that she comes from such terrible circumstances that the family— she became involved. This young lady was in a different sphere of influence entirely, brought up differently. She's been to college. She's graduated from college. So that she cannot argue from the point of view that she was so-called ignorant of what was going on or that she was befuddled or was drawn into a picture or didn't know what was going on. Not the usual dumb kid who is dragged in.

"So when you say she is young—sure, I wish I was young at 25 or 26. But not that young that we don't know what we are doing at that stage . . . . It's not like dealing with a youngster who comes out of the ghetto, who grows up to know nothing that is right except to commit one crime after another to satisfy whatever may be his problems at the time.

"A youngster at this age and this caliber, of this type of background and education, pretty much cannot plead ignorance.

"I am not dealing here with the usual type of individual who comes before us where they have all the—these personal problems and family problems and all that, things where they really might have an argument that they were unaware of all these ramifications of the law.

"Here we don't have—if I could use the word of a dumb kid who didn't know what she or he were doing. We have a person who in my judgment is far above the average, so that she knew what she was doing. She certainly knew the nature of what she was doing in that she was fooling around with stuff that was, you know, a little bit of dynamite."

would not derive benefit from treatment under the Act, leads us to conclude that the court employed a fixed and mechanical approach in imposing sentence rather than a careful appraisal of the variable components relevant to the sentence upon an individual basis. Williams v. Oklahoma, 358 U.S. 576, 585, 79 S.Ct. 421, 3 L.Ed.2d 516 (1959); Williams v. New York, 337 U.S. 241, 247–250, 69 S. Ct. 1529, 93 L.Ed. 1760 (1949). This situation requires us to invalidate the sentence. United States v. Brown, 470 F. 2d 285, 288–289 (2d Cir. 1972); United States v. Baker, 487 F.2d 360, 362–364 (2d Cir. 1974) (Lumbard *J.*, dissenting; Woolsey v. United States, 478 F. 2d 139, 143–145 (8th Cir. 1973). We are aware that United States v. Kaylor, 491 F.2d 1133 (2d Cir. 1974) (*en banc*) dealt with the "youth offender" [2] and required no express finding in this case of a "young adult offender" [3] that she would derive "no benefit" from a sentence under the Youth Corrections Act. *Compare* Dorszynski v. United States, — U.S. —, 94 S.Ct. 3042, 41 L.Ed.2d 855 (1974). The presence or absence of the specific finding sought by the attorneys is not a controlling factor. The court's statements, considered as a whole, were inappropriate because they are susceptible of the meaning that only a specific class of persons can claim consideration under the provisions of the Act.

Under these circumstances we direct that the case be reassigned for sentence by another judge "both for the judge's sake and the appearance of justice," Mawson v. United States, 463 F.2d 29, 31 (1st Cir. 1972) (*per curiam*); United States v. Brown, *supra.*[4]

Judgment reversed with instructions to vacate the sentence and to proceed to resentence in a manner consonant with this opinion.

MOORE, Circuit Judge (dissenting):

Before characterizing the sentencing procedure adopted by the sentencing judge in imposing sentence as "a fixed and mechanical approach * * * rather than a careful appraisal of the variable components relevant to the sentence upon an individual basis" and hence, as the majority states, a situation is presented which "requires us [the majority] to invalidate the sentence," it may not be amiss to examine the transcript to ascertain what the "situation" really was.

This young lady, anxious to take advantage, if possible, of being sentenced under the Youth Corrections Act, 21 U. S.C. § 841(a)(1) pleaded guilty, on February 19, 1974, before Chief Judge Jacob Mishler to an information charging her with wilfull and knowing possession of four ounces of cocaine with intent to sell or deliver it for someone else's use. Upon thorough and protracted questioning by the Court, the defendant admitted possession of the cocaine; that she was delivering it to someone else; that she knew the maximum sentence could be fifteen years plus a fine and parole; and that knowing the consequences and having been advised of her rights by Court and counsel, she desired to plead guilty. Sentence was fixed for March 22nd; the sentencing judge's name (then unknown) was to "come out of a drum."

On March 25, 1974, defendant came before Judge Travia for sentence. The

---

2. 18 U.S.C. § 5006(e): " 'Youth offender' means a person under the age of twenty-two years at the time of conviction."

3. 18 U.S.C. § 4209: ". . . a defendant who has attained his twenty-second birthday but has not attained his twenty-sixth birthday at the time of conviction. . . ."

4. The judge on remand may wish to consider resentencing under the Youth Corrections

Act since it appears that the term "conviction" in 18 U.S.C. § 4209, *supra* note 3, would mean the date of the plea of guilty in the context of this case and the appellant would therefore qualify for such consideration. United States v. Kleinzahler, 306 F. Supp. 311, 313–314 (E.D.N.Y.1969); *cf.* Standley v. United States, 318 F.2d 700, 701 (9th Cir. 1963).

Court had made available to her counsel the presentence report and various relevant letters and had directed counsel to read and discuss them with her. Alleged inconsistencies were discussed such as the quantity of marijuana and cocaine found in defendant's apartment.

The Court, mindful that defendant would be 26 years of age the next day, was aware of "the possibility of the imposition of sentence pursuant to the Youth Corrections Act rather than the adult sentence which she faces in this case."

Defendant's counsel argued vigorously that his client had "a real first class background"; that she was a "college graduate"; that she had "a good work record, excellent family" but performed a stupid thing—a criminal act, and urged that defendant be given the benefit of the Youth Corrections Act and probation.

The Court, in sentencing, noted that (in conformity with the practice in the Eastern District of discussing cases in a presentencing panel and receiving the sentencing recommendations of the other judges on the panel) he had conferred with other judges as to their recommendations with respect to the sentence and also said in part: "I have read this presentence report maybe five times already. I read every letter that was sent to me by a number of people * * *." The Court "after doing a little soul-searching of [his] own, * * *" and having considered all the facts before him concluded not to sentence under the Youth Corrections Act but under the adult provisions of the law. The Court used defendant's education only to show that "she knew what she was doing" and that he could not find "that she would in any way benefit by this YCA." The Court then sentenced defendant to four years under 18 U.S.C. § 4208(a)(2).

The Court, in turn, pointed to defendant's education and background—hence, her ability to understand the nature of her crime. Such knowledge was reinforced by her admissions at the time of the guilty plea and her statement before the sentencing judge himself: "I just want to say that I wasn't pleading ignorance as somebody from the ghetto. But I had knowledge." There is nothing in the record to indicate that the sentencing judge deemed "intelligence and privileged background" to be "pejorative factors disentitling her to treatment under the Youth Corrections Act." The majority's holding would imperil every sentence preceded by the trial judge's comment, "You had a good education. You should have known better." Or, since the majority "are constrained to disapprove of the manner in which this [the sentencing] was done," does this mean that a sentencing judge cannot excoriate a narcotics vendor without fear of having his sentence invalidated?

These comments "coupled with its [the sentencing judge's] express refusal * * * [to] make a specific finding that appellant would not derive benefit from treatment under the Act" led the majority "to conclude that the court employed a fixed and mechanical approach in imposing sentence rather than a careful appraisal of the variable components relevant to the sentence upon an individual basis."

Although not available at the time of sentencing or of the argument of this appeal, I had thought that the question of the sentencing judge's discretion to apply the Youth Corrections Act had been put to rest by the Supreme Court (1974) in Dorszynski v. United States, —— U.S. ——, 94 S.Ct. 3042, 41 L.Ed.2d 855. The four concurring Justices differed only from the five as to the form of the "no benefit" statement, namely, whether a "merely conclusory statement" or a more explicit statement was required. As to the issue before us, *i. e.*, the right of the sentencing judge to decide for or against sentencing under the Act, there was no disagreement. Writing for the four, Mr. Justice Marshall said: "But the Act clearly intended that the ultimate sentencing decision remain with the trial judge." For the five, the Chief Justice wrote: "The sole

issue in this case is the validity of the sentence imposed by the District Court." As to sentencing discretion, after a review of the legislative history of the Act, the Chief Justice said: "The intent of Congress was in accord with long-established authority in the United States vesting the sentencing function exclusively in the trial court.

"If there is one rule in the federal criminal practice which is firmly established, it is that the appellate court has no control over a sentence which is within the limits allowed by a statute." Gurera v. United States, 40 F. 2d 338, 340 (CA8 1930).

*See* Gore v. United States, *supra*; Townsend v. Burke, *supra*; Blockburger v. United States, *supra*. \* \* \* \* As our review has shown, the exclusive sentencing power of district judges was acknowledged, and Congress' intention to affirm that power was clearly indicated."

A judge is guilty of mechanical sentencing when he displays a "fixed sentencing policy based on the category of crime rather than on the individualized record of the defendant." United States v. Baker, 487 F.2d 360, 361 (2d Cir. 1973). Such an attitude can be demonstrated in one of two ways. First, it can be proven out of the mouth of the· sentencing judge, *i. e.*, he can state, at sentencing, that he "routinely" or "habitually" metes out a certain sentence for a given crime. For instance, in Woosley v. United States, 478 F.2d 139 (8th Cir. 1973), the sentencing judge, before imposing the maximum sentence on a defendant who pleaded guilty to a violation of the Selective Service Act, declared that it had been his practice for over thirty years to impose the maximum sentence in selective service cases. 478 F.2d at 144. Second, a mechanical attitude toward sentencing can be *prima facie* established by the sentencing court's prior record in similar cases. In the *Woosley* case, *supra*, the Court of Appeals for the Eighth Circuit examined the district court records and found an unwarranted consistency in the sentenc-

ing judge's past treatment of selective service offenders. Similarly, in United States v. Baker, *supra*, this court examined the records of the district court in an attempt to uncover a mechanical attitude toward sentencing on the part of the district judge. 487 F.2d at 361 n.1.

At no point in the sentencing process in this case did the Court declare that it was his custom or habit to sentence all drug offenders to four years' incarceration with open parole and three years' special probation. Likewise, the record discloses no survey of the district judge's past sentences from which this court might deduce that he sentences drug offenders in a mechanical way.

The District Court determined that defendant should be sentenced as an adult because she had been well educated and had been given many advantages, and whose criminal act could not be mitigated by a claim of ignorance or by the effects of crushing poverty which might have numbed her moral judgment. In addition, although defendant had no previous police record, there is evidence in the presentence report that she had engaged in transactions involving hard drugs before and had participated· in drug distribution. Thus, the approach of the District Court was anything but mechanical.

The facts here presented completely refute, in my opinion, the charge that the Court "employed a fixed and mechanical approach in imposing sentence." To the contrary, they show careful consideration of the individual before him. Under the circumstances, although the sentence may appear to have been unduly harsh, such correction, as the Supreme Court has indicated, is not for the Court of Appeals.

In light of *Dorszynski, supra*, the fact that the sentencing judge carefully considered the *pros* and *cons* of sentencing under the Act and the time-honored discretion vested in the sentencing judge, I can reach no other conclusion than that the judgment should be affirmed. For these reasons, I must dissent.