DECISION AND JUDGMENT ENTRY
{¶ 1} This is an appeal from an Athens County Common Pleas Court judgment of conviction and sentence. The jury found Steven Dyla, defendant below and appellant herein, guilty of third-degree felony driving while under the influence of alcohol in violation of R.C.4511.19.
 {¶ 2} Appellant raises the following assignments of error for review:
 FIRST ASSIGNMENT OF ERROR:
 "THE TRIAL COURT COMMITTED PREJUDICIAL ERROR *Page 2 
AND DENIED MR. DYLA DUE PROCESS OF LAW BY PERMITTING THE JURY TO LISTEN AND VIEW THE VIDEOTAPE OF TROOPER GOSSETT TRANSPORTING MR. DYLA TO JAIL AND BY ALLOWING THE STATE TO INQUIRE INTO WHETHER MR. DYLA WAS A CHRONIC ALCOHOLIC."
 SECOND ASSIGNMENT OF ERROR:
 "THE TRIAL COURT VIOLATED MR. DYLA'S RIGHT TO DUE PROCESS AND A FAIR TRIAL WHEN IT ENTERED A JUDGMENT OF CONVICTION FOR OPERATING A VEHICLE WHILE UNDER THE INFLUENCE OF ALCOHOL AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 THIRD ASSIGNMENT OF ERROR:
 "THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT ORDERED MY. DYLA TO SERVE A FOUR-YEAR PRISON TERM FOR OPERATING A VEHICLE WHILE INTOXICATED."
 {¶ 3} On September 12, 2006, Glenn Bell witnessed appellant's vehicle drive by his house and strike a telephone pole. Bell stated that appellant "tore up the right front fender and the door a little bit. He took off and headed across the road and darn near run [sic] into the garage. And then he got it straightened up and he went on down the road. He turned around and he come back and he started up Main Street. When he started up Main Street he run [sic] into the ditch right by my house and the car wouldn't start. I told him to sit there, I was going in to call the law." When Bell talked to appellant, he noticed that appellant was under the influence of alcohol. Bell explained that appellant staggered and smelled of alcohol.
 {¶ 4} Shortly thereafter, appellant's vehicle ended up in Debra Berry's front lawn. Berry looked out her window and saw appellant leaning over the steering wheel. She then observed him attempt to start his car. She decided to call 911 and then go outside to talk to appellant. As Berry approached appellant, he exited his vehicle and *Page 3 
attempted to fix a flat tire. Appellant fell down when he bent over to remove the tire. Appellant asked Berry if she knew where her nephew was. Berry noted that as appellant spoke, he slurred his words. She also smelled alcohol and saw appellant stumbling. Berry thought appellant looked drunk. She further observed that the front bumper of appellant's car had wood sticking out of it.
 {¶ 5} Berry's nephew, Ron Berry, also interacted with appellant. He believed that appellant was drunk. Berry stated that appellant slurred his words, staggered, and smelled of alcohol.
 {¶ 6} Glouster Police Chief Roger Taylor first responded to the 911 call. Chief Taylor, like Berry, also believed that appellant was under the influence of alcohol. Chief Taylor observed that appellant slurred his words, smelled of alcohol and had glassy eyes.
 {¶ 7} Ohio State Highway Patrol Trooper Timothy M. Gossett investigated the accident. When he arrived on the scene, he saw appellant's vehicle in the yard, and appellant was sitting in Chief Taylor's police cruiser. Trooper Gossett opened the door to talk to appellant. As soon as the trooper opened the door, he smelled "a very strong odor of alcohol or an alcoholic beverage coming from the vehicle." The trooper asked appellant what happened. Appellant stated that a truck ran him off the road. As appellant spoke, the trooper noted that his eyes were yellowed and glassy and that his speech was slow and slurred. The trooper asked him how much he had to drink and appellant stated three to four drinks. The trooper then asked appellant to exit Chief Taylor's cruiser and, as appellant did so, the trooper observed that "he was very unsteady on his feet on the hard * * * surface of the road edge." Trooper Gossett then placed appellant in his cruiser. *Page 4 
 {¶ 8} Trooper Gossett returned to the accident scene to talk to some of the witnesses. During this time, he also observed appellant's vehicle. The right front tire was flat and that the right front fender suffered damage. The fender had wood splinters, possibly from a telephone pole, and the wheel wells and crevices of the car also had pieces of wood lodged in them. The trooper returned to his vehicle and activated his microphone to record his ensuing encounter with appellant.
 {¶ 9} At the patrol post, appellant refused to take any sobriety tests. Appellant asked to use the bathroom and, afterwards, the trooper noted that appellant urinated all over his pants. The trooper felt that appellant was "highly under the influence of alcohol."
 {¶ 10} Subsequently, the Athens County Grand Jury returned an indictment charging appellant with (1) third-degree felony driving while under the influence of alcohol in violation of R.C. 4511.19(A)(1); and (2) driving under suspension in violation of R.C. 4510.16(A). Appellant entered a not guilty plea.
 {¶ 11} At trial, the prosecution presented testimony from the witnesses who interacted with appellant and each one unequivocally stated that appellant was intoxicated. Over appellant's objection, the prosecution played the tape from Trooper Gossett's encounter with appellant for the jury.
 {¶ 12} In his defense, appellant argued that the prosecution's witnesses incorrectly interpreted his slurred speech and staggering as indicators of intoxication when they actually indicated severe chronic liver disease. Appellant presented testimony from the nursing supervisor at the Southeastern Ohio Regional Jail, Lisa Rutter, who testified that appellant suffers from cirrhosis and hepatitis and that he currently takes Lactuloc three times per day to help eliminate ammonia build-up in his *Page 5 
blood. She stated that appellant was not administered Lactuloc prior to September 12, 2006. Rutter explained that without Lactuloc, appellant may have altering mental status, staggering when he walks, slow speech, and possible tremors. Rutter more specifically explained that "altering mental status" means that appellant would be unsure of the date and unable to engage in a normal conversation. Rutter further stated that when appellant was imprisoned between September 8, 2006 to September 11, 2006, he was administered an alcohol withdrawal medication.
 {¶ 13} Appellant testified that on the morning of September 12, 2006, he drank about three beers. He denied, however, that he was intoxicated. Appellant explained that he may have smelled of alcohol because on that date, he dug some beer cans out of a dumpster to collect money for the aluminum, and when he crushed the cans, beer sprayed on him. On cross-examination, appellant explained that his liver condition results from chronic alcoholism.
 {¶ 14} The jury found appellant guilty of operating a vehicle while under the influence of alcohol and the prosecution requested the dismissal of the driving under suspension charge. At appellant's sentencing hearing, the prosecution recommended a five year prison term. Appellee noted that appellant has a lengthy history of criminal conduct, imprisonment and driving while under the influence convictions, including two felony DUIs. The trial court sentenced appellant to serve four years imprisonment. This appeal followed.
 I {¶ 15} In his first assignment of error, appellant asserts that the trial court erred by permitting the jury to hear other acts evidence. Specifically, appellant complains that the trial court erroneously permitted the jury to hear the recording from Trooper *Page 6 
Gossett's vehicle. He argues that a reasonable probability exists that had the jury not heard evidence regarding his prior act of violence and his past arrests for alcohol-related offenses, the outcome of the trial would have been different.
 {¶ 16} Appellant contends that the trial court should not have permitted the jury to hear the following two conversations:
 "By Trooper Gossett: (Inaudible) how many DUIs have you beat in court?
 By Mr. Dyla: (Inaudible)
 By Trooper Gossett: You beat three already?
 By Mr. Dyla: (Inaudible).
 By Trooper Gossett: (Inaudible) well it says (inaudible) so he says he's going to beat this one too he says."
Appellant also objects to the following:
 "By Trooper Gossett: A gun fight? Is that what you said? You said a gun fight?
 By Mr. Dyla: (Inaudible)
 By Trooper Gossett: What do you do, beat your wife up all the time? Uh-huh. But you're not supposed to drink when you take them.
 By Mr. Dyla: (Inaudible)
 By Trooper Gossett: That's because you refused them all."
 {¶ 17} Appellant further argues that the trial court improperly allowed the jury to consider appellant's testimony on cross-examination that he is a chronic alcoholic.
 {¶ 18} Generally, all relevant evidence is admissible. See Evid.R. 402. Evid.R. 401 defines relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." A trial court must deem relevant evidence inadmissible, however, if the introduction of the evidence violates the United States or the Ohio Constitutions, an Ohio statute, the Ohio Rules of Evidence, or "other rules prescribed by the Supreme Court of Ohio."
 {¶ 19} Although in a criminal case evidence of an accused's character, including *Page 7 
his prior "bad acts," may be relevant, Evid.R. 404 sets forth a general bar against the use of such character evidence. Evid.R. 404(B) provides:
 Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence or mistake or accident.
 {¶ 20} In State v. Schaim (1992),65 Ohio St.3d 51, 600 N.E.2d 661, the court discussed the underlying rationale for the limited admissibility of other acts evidence as follows: "The admissibility of other acts evidence is carefully limited because of the substantial danger that the jury will convict the defendant solely because it assumes that the defendant has a propensity to commit criminal acts, or deserves punishment regardless of whether he or she committed the crime charged in the indictment. See State v. Curry
(1975), 43 Ohio St.2d 66, 68, 330 N.E.2d 720, 723. This danger is particularly high when the other acts are very similar to the charged offense, or of an inflammatory nature, * * *." Schaim,65 Ohio St.3d at 59.
 {¶ 21} In the case at bar, we believe that any error that may have resulted from the admission of the other acts evidence is harmless beyond a reasonable doubt. See Crim.R. 52(A) (stating that harmless errors "shall be disregarded"). The record contains overwhelming evidence of appellant's guilt. Every witness who interacted with appellant stated that appellant was clearly intoxicated. Appellant also admitted that he drove the vehicle and that he had consumed alcohol.
 {¶ 22} Additionally, the trial court did not abuse its discretion by overruling defense counsel's objection to appellant's testimony on cross-examination that he is a chronic alcoholic. As the prosecution correctly notes, defense counsel opened the door when it inquired on direct examination about appellant's liver condition. Furthermore, *Page 8 
we note that Rutter, the jail nurse, testified that appellant took an alcohol withdrawal medication during a previous stay at the jail. Thus, the jury could have independently concluded that appellant suffers from a serious alcohol addiction, and his own testimony to that effect was merely cumulative to Rutter's testimony.
 {¶ 23} Accordingly, based upon the foregoing reasons, we hereby overrule appellant's first assignment of error.
 II {¶ 24} In his second assignment of error, appellant asserts that his conviction for operating a vehicle while under the influence of alcohol is against the manifest weight of the evidence. In particular, appellant argues that the prosecution's evidence was unreliable. He asserts that the more likely explanation for his behavior on September 12, 2006 is that he had not received his medication, which caused his altered mental state, his staggering, and his impaired speech. He further contends that the reason he smelled of alcohol was not because he had consumed a large quantity of it, but because while he attempted to recycle used aluminum beer cans, beer sprayed on his clothes.
 {¶ 25} When an appellate court considers a claim that a conviction is against the manifest weight of the evidence, the court must dutifully examine the entire record, weigh the evidence, and consider the credibility of witnesses. The reviewing court must bear in mind, however, that credibility generally is an issue for the trier of fact to resolve. See State v. Issa (2001), 93 Ohio St.3d 49, 67, 752 N.E.2d 904;State v. Thomas (1982), 70 Ohio St.2d 79, 80, 434 N.E.2d 1356;State v. DeHass (1967), 10 Ohio St.2d 230, 227 N.E.2d 212, paragraph one of the syllabus. Once the reviewing court finishes its examination, the court may reverse the judgment of conviction only if it appears that *Page 9 
the fact-finder, in resolving conflicts in evidence, `"clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'"Thompkins, 78 Ohio St.3d at 387, 678 N.E.2d 541, quoting State v.Martin (1983), 20 Ohio App.3d 172, 175, 485 N.E.2d 717.
 {¶ 26} If the prosecution presented substantial evidence upon which the trier of fact reasonably could conclude, beyond a reasonable doubt, that the essential elements of the offense had been established, the judgment of conviction is not against the manifest weight of the evidence. See State v. Eley (1978), 56 Ohio St.2d 169, 383 N.E.2d 132, syllabus. A reviewing court should find a conviction against the manifest weight of the evidence only in the `"exceptional case in which the evidence weighs heavily against conviction.'" Thompkins,78 Ohio St.3d at 387, quoting Martin, 20 Ohio App.3d at 175; see, also,State v. Lindsey (2000), 87 Ohio St.3d 479, 483, 721 N.E.2d 995.
 {¶ 27} In the case sub judice, we believe that the prosecution presented substantial evidence upon which the trier of fact reasonably could conclude, beyond a reasonable doubt, that appellant committed the offense of driving while under the influence of alcohol. See R.C.4511.19(A)(1). Five witnesses testified that appellant was intoxicated. The evidence reveals that he had glassy eyes, strongly smelled of alcohol, stumbled as he walked, and slurred his speech. Appellant admitted that he drove the vehicle and two witnesses testified that they observed appellant operating the vehicle. In our view, the above mentioned evidence constitutes ample competent, credible evidence of appellant's guilt. Nothing in the record suggests that the prosecution's witnesses were unworthy of belief so as to discredit this evidence.
 {¶ 28} Appellant nevertheless complains that his explanation for his behavior *Page 10 
(that it resulted from his medical condition) is more credible than the prosecution's evidence. We do not find his argument persuasive. Appellant relied on his own testimony and that of a jail nurse that without proper medication for appellant's condition, he may have suffered altered mental states, staggering when walking, and slow speech. While nothing suggests that the nurse's testimony was necessarily unworthy of belief, the jury was not required to accept that appellant's medical condition was the cause of his behavior on September 12, 2006. A trier of fact may choose to believe or disbelieve the testimony of any witness who appears before it. Here, the jury did not clearly lose its way by concluding that appellant was intoxicated, and not simply suffering the effects of a medical condition.
 {¶ 29} Accordingly, based upon the foregoing reasons, we overrule appellant's second assignment of error.
 III {¶ 30} In his third assignment of error, appellant argues that the trial court abused its discretion by sentencing him to a four-year prison term.
 {¶ 31} In State v. Davis, Highland App. No. 06CA21, 2007-Ohio-2944, at ¶¶ 41-42, we set forth the standard of review for a trial court's sentencing decision:
 `"[T]rial courts have full discretion to impose a prison sentence within the statutory range and are no longer required to make findings or give their reasons for imposing maximum, consecutive, or more than the minimum sentences.' State v. Foster, 109 Ohio St.3d 1, 2006-Ohio-856, 845 N.E.2d 470, at ¶ 100. However, in exercising their discretion, trial courts must still consider R.C. 2929.11 and R.C. 2929.12 before imposing a sentence within the authorized statutory range. Id. at ¶ 105; see, also, State v. Mathis, 109 Ohio St.3d 54, 2006-Ohio-855, 846 N.E.2d 1, at ¶ 38; State v. Elswick, Lake App. No. 2006-L-075, 2006-Ohio-7011, at ¶ 53 (stating that "[e]ven though trial courts are no longer required to make specific findings or give their reasons for imposing maximum, consecutive, or more than the minimum sentences on the record, R.C. 2929.11 and R.C. 2929.12 must still be considered when sentencing offenders"). *Page 11 
 Thus, we review a felony sentence under the abuse of discretion standard. Foster, at paragraph seven of the syllabus. See, e.g., State v. Pace, Medina App. No. 06CA74-M, 2007-Ohio-1354, at ¶ 7; State v. Duff, Licking 06CA81, 2007-Ohio-1294, at ¶¶ 6. `The term abuse of discretion * * * connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable.' State v. Montgomery (1991), 61 Ohio St.3d 410, 413, 575 N.E.2d 167, quoting State v. Adams (1980), 62 Ohio St.2d 151, 157, 404 N.E.2d 144. `"An `abuse of discretion' has also been found where a sentence is greatly excessive under traditional concepts of justice or is manifestly disproportionate to the crime or the defendant. Woosley v. United States (1973), 478 F.2d 139, 147. * * * Where the severity of the sentence shocks the judicial conscience or greatly exceeds penalties usually exacted for similar offenses or defendants, and the record fails to justify and the trial court fails to explain the imposition of the sentence, the appellate court's [sic] can reverse the sentence. Woosley, supra at 147. This by no means is an exhaustive or exclusive list of the circumstances under which an appellate court may find that the trial court abused its discretion in the imposition of [a] sentence in a particular case.'" Elswick, at ¶ 49, quoting State v. Firouzmandi, Licking App. No. 2006-CA-41, 2006-Ohio-5823, at ¶ 56."
 {¶ 32} In the case at bar, we do not believe that the trial court abused its discretion by sentencing appellant to a four year prison term. The jury found appellant guilty of third degree felony driving while under the influence. For a third degree felony driving while under the influence offense, R.C. 4511.19(G)(2)(e)(i) requires the court to impose a mandatory prison sentence ranging from one to five years. Moreover, R.C. 292.14(A)(3) authorizes a trial court to sentence a third-degree felony offender to one to five years in prison. In the case sub judice, the trial court's four year prison sentence falls within the statutory range.
 {¶ 33} Additionally, appellant obviously had a prior felony conviction for driving while under the influence offense. See R.C. 4511.19(G)(2)(e) and R.C. 4511.19(G)(2)(d). The trial court also noted that appellant had other prior criminal convictions. Based on these circumstances, we do not believe that the trial court *Page 12 
abused its discretion by choosing to impose a four year prison term for appellant's offense. Unfortunately, this appears to be the trial court's only choice of sanction to keep appellant from operating a motor vehicle while under the influence.
 {¶ 34} Accordingly, based upon the foregoing reasons, we hereby overrule appellant's third assignment of error and affirm the trial court's judgment.
JUDGMENT AFFIRMED.
 JUDGMENT ENTRY
It is ordered that the judgment be affirmed and that appellee recover of appellant the costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Athens County Common Pleas Court to carry this judgment into execution.
If a stay of execution of sentence and release upon bail has been previously granted, it is continued for a period of sixty days upon the bail previously posted. The purpose of said stay is to allow appellant to file with the Ohio Supreme Court an application for a stay during the pendency of the proceedings in that court. The stay as herein continued will terminate at the expiration of the sixty day period.
The stay will also terminate if appellant fails to file a notice of appeal with the Ohio Supreme Court in the forty-five day period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Ohio Supreme Court. Additionally, if the Ohio Supreme Court dismisses the appeal prior to the expiration of said sixty days, the stay will terminate as of the date of such dismissal.
A certified copy of this entry shall constitute that mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Harsha, J.: Concurs in Judgment Opinion as to Assignments of Error II III; Concurs in Judgment Only as to Assignment of Error I
 Kline, J.: Concurs in Judgment Opinion *Page 1